**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Benjamin RUGGIERO and John Cerasani, Defendants-Appellants.**

No. 83–3750.

United States Court of Appeals,
Eleventh Circuit.

March 5, 1985.

Charles R. Wilson, Tampa, Fla., for Ruggiero.

Michael Young, New York City, for Cerasani.

William C. Bryson, Sidney M. Glazer, Dept. of Justice, Washington, D.C., for United States.

Before KRAVITCH and HENDERSON, Circuit Judges, and ATKINS,* District Judge.

KRAVITCH, Circuit Judge:

In late 1982, appellants Benjamin Ruggiero and John Cerasani were prosecuted in the United States District Court for the Southern District of New York for substantive and conspiracy violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d). Ruggiero was convicted of conspiring to violate RICO, but was acquitted of the substantive RICO count. He was sentenced to fifteen years in prison. Cerasani was acquitted on both counts.

In early 1983, the indictment in the instant case was returned in the United States District Court for the Middle District of Florida, and the appellants again were charged with substantive and conspiracy RICO violations. The appellants moved to dismiss the Florida indictment on the grounds of double jeopardy. Their motion was denied, and this appeal ensued.

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

The appeal presents an issue of first impression in this circuit: How to define the scope of a RICO violation for double jeopardy purposes. We conclude that the substantive and conspiracy RICO violations charged in the Florida indictment are distinct from those for which the appellants previously were prosecuted in New York, and therefore hold that the appellants are not entitled to a dismissal of the Florida indictment on the grounds of double jeopardy. We also hold that the doctrine of collateral estoppel does not require the dismissal of the charges against Cerasani in the Florida indictment.

## I. BACKGROUND

### A. *The New York Indictment*

The New York indictment, which was returned on July 7, 1982,[1] charged the appellants and eight others with conspiring to violate RICO, and the appellants and seven others with substantive violations of RICO, in connection with the activities of the so-called "Bonnano Family" of La Cosa Nostra, also known as the Mafia.[2] The indictment alleged the occurrence of numerous illegal activities between 1974 and July, 1982, including:

(1) the murders of Alphonse Indelicato, Philip Giaccone, and Dominick Trinchera, three "captains" of the Bonnano Family who were seeking to wrest control of the family away from two other "captains," Dominick Napolitano and Joseph Messina;[3]

(2) a conspiracy to murder Anthony "Bruno" Indelicato, Alphonse's son;

(3) the receipt, storage, and resale of a truckload of stolen tuna fish;

(4) the theft of a tractor-trailer containing clothing and other freight;

(5) the attempted robbery of the occupants of an apartment belonging to the sister of the Shah of Iran;

(6) a conspiracy to rob the Landmark Union Trust Bank in St. Petersburg, Florida;

(7) a conspiracy to rob the Pan Am Credit Union in Rockleigh, New Jersey;

(8) a conspiracy to rob the occupants of the Galerie Des Monies in New York;

(9) the possession and distribution of methaqualone in the Eastern and Southern Districts of New York; and

(10) the operation of an illegal sports and numbers gambling business.

The indictment alleged that Ruggiero conspired to commit the four murders and to distribute methaqualone in the Eastern District of New York, and that he actually participated in the murders of Alphonse Indelicato, Giaccone, and Trinchera. Cerasani was named as a conspirator in the two truck thefts and all of the robberies except the robbery of the Landmark Union Trust Bank, the distribution of methaqualone in the Eastern District of New York, and the operation of the illegal gambling business, and as an actual participant in the two truck thefts, the attempted robbery of the apartment belonging to the sister of the Shah of Iran, the distribution of methaqualone in the Eastern District of New York, and the operation of the illegal gambling business.

Ruggiero was convicted of conspiring to violate RICO, but was acquitted on the substantive RICO count. He was sentenced to fifteen years in prison. His RICO conspiracy conviction was affirmed on appeal. *See United States v. Ruggiero,* 726 F.2d 913 (2d Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Cerasani was acquitted on both counts.

### B. *The Florida Indictment*

The Florida indictment, which was returned on March 31, 1983, charged the ap-

---

**1.** The indictment superseded indictments filed on November 23, 1981, and March 25, 1982.

**2.** The indictment also charged three individuals with possession and distribution of methaqualone, 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A), and conspiring to possess and distribute methaqualone, 21 U.S.C. § 846. Neither

of the appellants were charged with the methaqualone offenses.

**3.** The evidence at trial revealed that Ruggiero was a member of the "crew" captained by Napolitano. Neither Napolitano nor Messina appeared for trial, and Napolitano later was found murdered.

pellants and ten others with conspiring to violate RICO, and the appellants and nine others with substantive violations of RICO, in connection with the activities of a loose-knit enterprise composed of members of several La Cosa Nostra "families." The enterprise included members of the "Traffi-cante Family," the "Luchese Family," the "Gambino Family," the "Chicago Outfit," and the "Bonnano Family." [4] The indict-ment alleged the occurrence of numerous illegal activities between March, 1979, and November, 1981, including:

(1) the operation of an illegal gambling business at an apartment in Port Richey, Florida;

(2) the operation of an illegal gambling business at the Kings Court Club in Holi-day, Florida;

(3) a conspiracy to operate an illegal gambling business at the Ridgerunner Club in Port Richey, Florida;

(4) a conspiracy to maintain an illegal gambling facility in the Middle District of Florida;

(5) the operation of an illegal sports bookmaking business;

(6) travelling in interstate commerce to facilitate the operation of an illegal gam-bling business;

(7) the extortion of money from one Sylvester Hutchins;

(8) a conspiracy to interfere with com-merce by extorting money from persons and organizations engaged in the private sanitation industry on the west coast of Florida;

(9) a conspiracy to collect debts by vio-lent means and by threats of violence;

(10) a conspiracy to obtain through bribery a license to operate a parimutuel dog track in Pasco County, Florida;

(11) a conspiracy to rob the Landmark Union Trust Bank in St. Petersburg, Florida;

(12) a conspiracy to possess, sell, and distribute marihuana, cocaine, and her-oin;

(13) a conspiracy to obstruct justice by paying bribes to the captain of the Pasco County, Florida, Sheriff's Office; and

(14) the obstruction of justice by giv-ing false testimony before a federal grand jury.

The indictment alleged that Ruggiero conspired to operate the illegal gambling business at the Kings Court Club, to oper-ate the illegal sports bookmaking business, to maintain the illegal gambling facility in the Middle District of Florida, to travel in interstate commerce to facilitate the opera-tion of an illegal gambling business, to obtain through bribery the license to oper-ate the parimutuel dog track in Pasco County, to rob the Landmark Union Trust Bank, and to possess, sell, and distribute marihuana, cocaine, and heroin, and that he actually travelled in interstate commerce to facilitate an illegal gambling business and participated in the operation of the illegal gambling business at the Kings Court Club. Cerasani allegedly conspired to rob the Landmark Union Trust Bank and to possess, sell, and distribute marihuana, co-caine, and heroin.

## C. The Proceedings Below

On July 15, 1983, the appellants filed a motion to dismiss the Florida indictment on the grounds of double jeopardy. The dis-trict court conducted a hearing and, on December 6, 1983, denied the motion. The appellants then filed a notice of appeal. On December 15, 1983, the court ruled that the appellants' double jeopardy claim was non-frivolous and, in accordance with *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir.) (*en banc*), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980),[5] continued the trial date until the merits of

---

4. The indictment alleged that Santo Trafficante, Jr., the head of the "Trafficante Family," agreed to permit the members of the other families to engage in criminal activities on the west coast of Florida in return for a percentage of the profits derived from those activities.

5. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the claim could be resolved by this court on appeal.

## II. RICO AND DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Supreme Court has emphasized that the Double Jeopardy Clause protects a person not only against being twice *convicted* of the same offense, but also against being twice *put to trial* for the same offense. *See Abney v. United States,* 431 U.S. 651, 660–61, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977). Therefore, we must dismiss the Florida indictment if we find that the indictment charges the appellants with the same offenses for which they previously were prosecuted in New York.[6]

Our task is made more difficult by the peculiar nature of the RICO statute. The subsection of RICO that the appellants are charged with violating and conspiring to violate,[7] 18 U.S.C. § 1962(c), provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Unlike most criminal statutes, subsection 1962(c) deals not with clearly distinguishable discrete acts, but with ongoing criminal activity. At the same time, subsection 1962(c) differs from most other criminal statutes dealing with ongoing criminal activity. Such statutes generally prohibit *participation* in a particular kind of criminal venture. *See, e.g.,* 18 U.S.C. § 1955 ("Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both."); 21 U.S.C. § 848 ("Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment...."). Thus, under such statutes, a potential double jeopardy problem arises whenever a defendant is charged twice with participating in the same criminal venture during the same period of time. *See Sanabria v. United States,* 437 U.S. 54, 69–74, 98 S.Ct. 2170, 2181–84, 57 L.Ed.2d 43 (1978) (defendant may be prosecuted only once under 18 U.S.C. § 1955 for participating in an illegal gambling business during given period of time, even if the illegal gambling business violated more than one criminal statute).

Subsection 1962(c), on the other hand, prohibits participation in an enterprise *"through a pattern of racketeering activity."* The "pattern of racketeering activity" is a separate element of the RICO offense, distinct from both the existence of the enterprise and the participation of the individual in the enterprise. *See United States v. Phillips,* 664 F.2d 971, 1011 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).[8] Because of this separate element, an individual may be prosecuted for more than one violation of subsection 1962(c) in connection with the same enterprise, so long as each violation involved a different "pattern of racketeering activity." *See United States v. Russotti,* 717 F.2d 27, 33

---

6. In *Abney,* the Supreme Court held that "pretrial orders rejecting claims of former jeopardy ... constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of § 1291." 431 U.S. at 662, 97 S.Ct. at 2042. Thus, we have jurisdiction to hear this appeal although the appellants have not yet been placed on trial under the Florida indictment.

7. The charge of conspiring to violate RICO arises under 18 U.S.C. § 1962(d), which provides:

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

8. Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

(2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984); *United States v. Dean,* 647 F.2d 779, 787 (8th Cir.1981), *modified on other grounds,* 667 F.2d 729 (8th Cir.) *en banc, cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).

■ The crucial inquiry in this case, therefore, is whether the activities set out in the New York and Florida indictments constitute one "pattern of racketeering activity" or two different "pattern[s]." [9] Although we have not conducted this kind of inquiry before, we do not write on an entirely clean slate. Both the Eighth Circuit, in *Dean,* and the Second Circuit, in *Russotti,* addressed double jeopardy claims raised by defendants who had been charged with multiple RICO violations.[10] The *Dean* and *Russotti* courts considered the following five factors in determining whether the indictments charged the existence of one "pattern of racketeering activity" or two different "pattern[s]":

(1) whether the activities that allegedly constituted two different RICO "pattern[s]" occurred during the same time periods;

(2) whether the activities occurred in the same places;

(3) whether the activities involved the same persons;

(4) whether the two indictments alleged violations of the same criminal statutes; and

(5) whether the overall nature and scope of the activities set out in the two indictments were the same.

*See Russotti,* 717 F.2d at 33; *Dean,* 647 F.2d at 788. These five factors are modified versions of the factors long used to determine whether multiple indictments charge the existence of one or several conspiracies. *See United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978); *Arnold v. United States,* 336 F.2d 347, 350 (9th Cir. 1964), *cert. denied,* 380 U.S. 982, 85 S.Ct. 1348, 14 L.Ed.2d 275 (1965); *Short v. United States,* 91 F.2d 614, 619–20 (4th Cir. 1937).[11]

We are persuaded that these five factors constitute an appropriate method for deter-

**9.** Although each indictment contained both a substantive RICO charge and a conspiracy RICO charge, we need not compare the substantive and conspiracy charges separately. It is apparent that, in each indictment, both the substantive and conspiracy RICO charges were based on the same underlying "pattern of racketeering activity." Therefore, we may compare the indictments as a whole in order to determine whether the underlying "pattern[s] of racketeering activity" were the same or different.

**10.** In *Dean,* the defendant, an Arkansas county judge, was charged in two indictments with two substantive RICO violations, 18 U.S.C. § 1962(c), and thirty-six violations of the Travel Act, 18 U.S.C. § 1952. The first RICO violation involved actual and fictitious county purchases of corrugated metal culverts and other items from a supplier who paid kickbacks to the defendant. The second RICO violation involved county purchases of diesel fuel additives, gasoline additives, motor oil, and other automotive products from a different supplier who also paid kickbacks to the defendant. The defendant was tried and convicted on all counts.

On appeal, the Eighth Circuit reversed and remanded the case for a new trial because one of the jurors was biased against the defendant. *Dean,* 647 F.2d at 785. The court also, however, rejected the defendant's contention that his con-

viction on both RICO counts violated the Double Jeopardy Clause. *Id.* at 785–89. On rehearing, the *en banc* court held that the defendant had waived the issue of juror bias, and affirmed the convictions. *Dean,* 667 F.2d at 734.

In *Russotti,* four defendants were indicted for substantive and conspiracy RICO offenses, 18 U.S.C. §§ 1962(c) and (d). Two of the defendants had been tried and acquitted of substantive and conspiracy RICO charges some five years earlier. The two defendants filed motions to dismiss the indictment based on, *inter alia,* the Double Jeopardy Clause and the doctrine of collateral estoppel. The district court denied the motions to dismiss, and the Second Circuit affirmed. *Russotti,* 717 F.2d at 35.

**11.** The five factors, as applied to multiple conspiracy indictments, include:

(1) the time periods during which the events alleged to be part of the conspiracies occurred;

(2) the places where the events occurred;

(3) the persons acting as coconspirators;

(4) the statutory offenses charged in the indictments; and

(5) the overt acts or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case.

*See Marable,* 578 F.2d at 154.

mining whether multiple RICO indictments allege the existence of one "pattern of racketeering activity" or several "pattern[s]." In this regard, we agree with the following observations of the *Dean* court:

> A RICO charge focusses upon the "pattern" formed by a number of unlawful acts, while a conspiracy charge focusses upon the agreement formed by persons to do unlawful acts. Thus, a RICO charge, like a conspiracy charge, focusses upon a relation between various elements of criminal activity rather than a single criminal act. Determination in a given case of the number of patterns or agreements requires examination of the four corners of the charges. The cases have employed five factors to make this determination in conspiracy cases, and similar factors appear to us relevant in the RICO context. . . .

647 F.2d at 788; *see* Tarlow, *RICO: The New Darling of the Prosecutor's Nursery,* 49 Fordham L.Rev. 165, 257–259 (1980) ("The practical approach to multiple conspiracy indictments should affect cases involving separate section 1962(c) indictments.").[12] We also agree with the *Russotti* court that the fifth factor, which involves a comparison of the overall nature and scope of the activities set out in the two indictments, is the most important factor. *See Russotti,* 717 F.2d at 34. We therefore proceed to apply the five factors to the indictments involved in this case.

Applying the first factor, we find a significant overlap in the time periods covered by the two indictments. The New York indictment included activities that occurred between 1974 and July, 1982, and the Florida indictment included activities that oc-

curred between March, 1979, and November, 1981. Thus, the time period covered by the Florida indictment fits completely within the time period covered by the New York indictment.

The second and third factors, however, involve only minor overlaps. The activities set out in the two indictments generally occurred in different places. The activities in the New York indictment primarily occurred in New York and New Jersey, and the activities in the Florida indictment primarily occurred in Florida. The only geographic overlap is created by the reference in both indictments to the conspiracy to rob the Landmark Union Trust Bank in St. Petersburg, Florida. The activities set out in the two indictments also generally involved different persons. In fact, the only persons named in both indictments are the appellants.

The fourth factor also involves only a minor overlap in the two indictments. The New York indictment involved the underlying statutory crimes of murder (New York law), theft (18 U.S.C. §§ 2315 and 659), robbery (New York, New Jersey, and Florida law), possession and distribution of methaqualone (21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A)), and gambling (New York law and 18 U.S.C. § 1955). The Florida indictment involved the underlying statutory crimes of gambling (Florida law and 18 U.S.C. § 1955), bribery (Florida law), obstruction of law enforcement (18 U.S.C. § 1511), interference with commerce (18 U.S.C. § 1951), interstate travel in aid of a racketeering enterprise (18 U.S.C. § 1952), extortion (18 U.S.C. § 894), obstruction of justice (18 U.S.C. § 1503), robbery (Florida law), and possession and distribution of

---

**12.** Although subsection 1962(c) is not a conspiracy statute, we find it to be sufficiently similar to allow the use of the same five factors for double jeopardy analysis. In particular, although the search for one or more conspiratorial "agreements" may differ in some respects from the search for one or more RICO "pattern[s]," this court's predecessor has discussed the multiple conspiracy issue in terms perfectly applicable to RICO:

> The evidence discloses that the unlawful agreement pursuant to which the conspirators

acted was but a single agreement to deal in drugs. It cannot be separated into dual conspiracies under Section 846 to distribute cocaine and heroin without offending the Double Jeopardy Clause. When the events of the alleged heroin conspiracy are overlaid with those of the cocaine conspiracy, there emerges *not two discrete patterns of activity but a single design* with the events most important in each case appearing at crucial and common junctures.

*Marable,* 578 F.2d at 155–56 (emphasis added).

controlled substances (21 U.S.C. §§ 841(a)(1) and 846). Thus, the two indictments overlap only in their references to the federal drug statutes, 21 U.S.C. §§ 841 and 846, the federal gambling statute, 18 U.S.C. § 1955, and the Florida robbery statute.

Finally, we find no overlap in the fifth and most important factor. The New York indictment, viewed in its totality, involved the efforts of the "Bonnano Family" to establish and maintain a criminal empire in the New York/New Jersey area. The Florida indictment, on the other hand, involved a "joint venture" by members of several La Cosa Nostra families to conduct various criminal activities on the west coast of Florida. We find this distinction in the overall nature and scope of the activities set out in the indictments more than sufficient, in this case, to outweigh the overlaps in connection with the other factors.

■ On balance, then, we conclude that the New York and Florida indictments charged the existence of two different "pattern[s] of racketeering activity." In view of this conclusion, the presence of one particular "racketeering act" in both indictments, namely, the conspiracy to rob the Landmark Union Trust Bank in St. Petersburg, Florida, is not significant. We see no reason why one "racketeering act" may not

be a part of two different "pattern[s] of racketeering activity." [13] The Double Jeopardy Clause protects a person against successive prosecutions *for the same crime*, not against successive prosecutions for two *different* crimes that happen to include the same underlying act.[14]

■ Like the *Dean* and *Russotti* courts, we are mindful of the Supreme Court's admonition that "[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal and spatial units." *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). We also recognize that the RICO statute is susceptible to abuse in the hands of overzealous prosecutors. *See Russotti*, 717 F.2d at 34 & n. 4; Tarlow, *RICO: The New Darling of the Prosecutor's Nursery*, 49 Fordham L.Rev. 165, 259 n. 505 (1980). Nevertheless, we perceive no such abuse in this case. Here, the appellants engaged in two fundamentally different "pattern[s]" of criminal conduct. Hence, the Florida indictment did not charge the appellants with the same offenses for which they previously were prosecuted in New York, and the appellants' motion to dismiss properly was denied.[15]

13. By way of comparison, we note that one "overt act" can be in furtherance of two different conspiracies. For example, *A* might purchase a gun for the dual purposes of (1) committing a bank robbery pursuant to a conspiracy with *B* and *C*, and (2) committing a murder pursuant to a different conspiracy with *X* and *Y*. The presence of the same overt act, the purchase of the gun, in separate indictments for the two conspiracies certainly would not create a double jeopardy problem.

14. For similar reasons, we reject the appellants' contention that the Double Jeopardy Clause was offended by the introduction, at the New York trial, of evidence relating to some of the activities later set out in the Florida indictment. This contention would have merit only if the evidence at the New York trial revealed that the "pattern of racketeering activity" was broader in scope than alleged in the indictment. Upon reviewing the excerpts from the New York trial contained in the record on appeal in this case, we conclude that the challenged evidence pri-

marily was offered to explain how the government's witnesses, who had infiltrated the criminal enterprise in Florida, had obtained their information. We find no indication, either in the trial excerpts or in the Second Circuit's opinion on appeal, that the "pattern of racketeering activity" was broadened at trial to include the activities set out in the Florida indictment. In fact, the one "racketeering act" contained in both indictments, the conspiracy to rob the Landmark Union Trust Bank in St. Petersburg, Florida, was not even submitted to the jury at the New York trial.

15. The government also contends that the New York and Florida indictments involved two different RICO "enterprises." According to the government, the New York indictment involved a group of persons affiliated with the "Bonnano Family," and the Florida indictment involved a basically different group of persons affiliated with several La Cosa Nostra families.

It is true that Congress gave the term "enterprise" under the RICO statute an extremely

## III. COLLATERAL ESTOPPEL

■ Appellant Cerasani also contends that the doctrine of collateral estoppel requires the dismissal of the charges against him in the Florida indictment. It is true that, in criminal cases, the doctrine of collateral estoppel is a corollary of the Double Jeopardy Clause. *See Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). The doctrine, however, requires the dismissal of charges against an individual only if, in order to prove those charges, the government must relitigate an issue of ultimate fact that *necessarily* was resolved in favor of the individual in a previous trial. *See Russotti,* 717 F.2d at 35. The crucial issue is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194; *see Russotti,* 717 F.2d at 35.

■ The doctrine does not apply to the instant case because there is no issue of ultimate fact raised by the Florida indictment that *necessarily* was resolved in favor of Cerasani in the New York trial. Cerasani's previous acquittal could have been based on the jury's conclusion that, although Cerasani was an active member of the "Bonnano Family," he did not participate in the particular "pattern of racketeering activity" set out in the New York indictment. The Florida indictment, on the other hand, charges the existence of a different "pattern of racketeering activity."

Thus, in the words of the *Russotti* court, "at this stage of the proceedings, we fail to see any indication of an attempt by the government 'to persuade a second jury of the same fact already litigated' in defendants' favor." 717 F.2d at 35 (quoting *United States v. Mespoulede,* 597 F.2d 329, 335 (2d Cir.1979)); *see also United States v. Boffa,* 513 F.Supp. 444, 483 (D.Del.1980) (*"A fortiori* the jury could have reached its decision to acquit without resolving any of the present issues in favor of the defendant. Consequently, the doctrine of collateral estoppel does not require dismissal of any portion of the present Indictment."). We hold that Cerasani is not entitled to a dismissal of the charges against him in the Florida indictment under the doctrine of collateral estoppel.

## IV. CONCLUSION

For the foregoing reasons, the order of the district court denying the appellants' motion to dismiss the indictment is AFFIRMED.

---

broad definition, *see United States v. Thevis,* 665 F.2d 616, 625 (5th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982), and that "any union or group of individuals associated in fact," whether legitimate or illegitimate, can constitute a RICO "enterprise," *see United States v. Turkette,* 452 U.S. 576, 580–81, 101 S. Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Furthermore, multiple RICO indictments involving truly different "enterprises" pose no double jeopardy problem, even assuming that the indictments allege only one "pattern of racketeering activity." *See Russotti,* 717 F.2d at 33 ("[I]n order for the present indictment to give rise to a valid claim of double jeopardy, *both* the enterprise and the pattern of activity alleged in the [previous] indictment must be the same as those

alleged in the [present] indictment." (emphasis in original)). The problem is in determining whether two RICO "enterprises" are truly different for double jeopardy purposes. *See* Tarlow, *RICO: The New Darling of the Prosecutor's Nursery,* 49 Fordham L. Rev. 165, 258–59 & n. 505 (1980). Eventually, courts may find it necessary to devise a method, perhaps similar to the one we employ today to compare RICO "pattern[s]," for determining whether two RICO "enterprises" are the same or different. We need not address the issue here, however. Because we find that the New York and Florida indictments charged the existence of two different "pattern[s] of racketeering activity," it is immaterial whether the indictments also alleged the existence of two different RICO "enterprises."