**UNITED STATES of America**

v.

**John A. GOTTI, Jr.**

**Case No. 8:08–cr–312–T–23EAJ.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 2, 2008.

Jay G. Trezevant, Adelaide G. Few, U.S. Attorney's Office, Tampa, FL, for United States of America.

Charles Carnesi, Charles Carnesi, Attorney at Law, Garden City, NY, Seth Ginsberg, Law Office of Seth Ginsberg, New York, NY, Henry Gonzalez, Law Office of Henry Gonzalez, Tampa, FL, for John A. Gotti.

### ORDER

STEVEN D. MERRYDAY, District Judge.

John A. Gotti, Jr., moves (Doc. 24) to transfer this action to the Southern or the Eastern District of New York. The United States responds (Doc. 29) in opposition. With leave of court under Local Rule 3.01(c), Gotti replies (Doc. 37). A hearing, attended by Gotti, occurred on Thursday, November 20, 2008.

### THE FLORIDA INDICTMENT

A grand jury in the Tampa Division of the Middle District of Florida returned a one-count indictment (Doc. 1) against Gotti in July, 2008. The indictment charges only one crime: a conspiracy in violation of Section 1962(d) of the "Racketeer Influenced and Corrupt Organization Act," 18 U.S.C. §§ 1961–68 ("RICO"). The indictment charges only the RICO conspiracy offense and not the substantive RICO offense of racketeering; the indictment charges no other offense of any kind, RICO or otherwise (although the indictment alleges that an ominous array of other crimes occurred as part of the methods employed by the alleged RICO conspiracy in effecting the alleged pattern of racketeering). The indictment alleges a complex but organized criminal structure and a broad criminal purpose for the "Gambino Crime Family," a component of an even more comprehensive criminal organization known as "La Cosa Nostra."

The Gambino Crime Family is an allegedly aggressive and persistent criminal enterprise that pursues criminal activity in both interstate and international commerce, including criminal activity in, but not limited to, New York, New Jersey, Pennsylvania, and Florida. The indictment alleges that Gotti, as well as serving as an "associate, soldier, captain, and *de facto* boss," has served as a member of a group, a "committee of captains," that controls the Gambino Crime Family, which undertakes to realize an organizational profit, as well as to avenge organizational and other grievances and realize individual gain for the participants. The indictment alleges that the Gambino Crime Family employs an array of both violent and non-violent criminal means to achieve these and other criminal objectives.

The indictment alleges that Gotti and others in the Gambino Crime Family conspired to maintain and operate a criminal enterprise engaged in a pattern of racketeering. The enterprise allegedly em-

ployed means including murder (the indictment alleges with specificity a murder in 1988, a murder in 1990, and another murder in 1991, all three murders occurring in New York), distribution of controlled substances, robbery, kidnapping, extortion, bribery, counterfeiting, gambling, and usury, among other criminal activities. Paragraph 17 of the indictment, which is two and a half pages in length, which is introduced by the heading "The Pattern of Racketeering Activity," and which is divided into subparagraphs (a) through (u), alleges a lengthy series of crimes committed by Gotti's RICO enterprise in furtherance of the pattern of racketeering. Each of subparagraphs (a) through (g) alleges a violation of the criminal law of New York. Each of subparagraphs (h) through (u) alleges a violation of the criminal law of the United States. Only subparagraphs (b), (c), and (e) allege (along with a violation of New York law) a violation of the criminal law of Florida, although the statute allegedly violated in each instance is Section 777.04, Florida Statutes, which is the general prohibition against "attempts, solicitation, and conspiracy." In other words, Paragraph 17 includes as part of the alleged racketeering activity no particular allegation of an accomplished substantive offense against Florida law.

The indictment further alleges that Gotti and others in the Gambino Crime Family undertook "to establish and maintain [Gambino Crime Family] footholds, or operational bases, in various parts of the United States" and "to further expand the [Gambino Crime Family's] criminal domination and influence." These efforts include the establishment of a "foothold" in Tampa, Florida, in the Middle District of Florida and in "other cities." The indictment alleges that members of the Gambino Crime Family "would and did travel from New York City and elsewhere to the Middle District of Florida ... to commit various crimes involving the threatened and actual use of deadly force and violence" and that the Gambino Crime Family transported to Florida, among other places, "property obtained by means of illegal activities in the State of New York, the State of Florida, and elsewhere."

In the response to the motion to transfer, the United States observes in summary that "[a]t its core, the indictment charges Gotti and others in the [Gambino Crime Family] with conspiring to engage in a pattern of racketeering activities to generate money or income ... and then concealing the illegal source of their criminal income by investing some of the income to acquire, establish, or operate various businesses" by "using other family members, criminal associates, or other nominees." The allegations of the indictment omit any boundary of time, place, or person and plainly encompass a RICO conspiracy conceived, agreed, and pursued nationally and internationally by Gotti, his co-conspirators, and their operatives in the Gambino Crime Family. The indictment charges a RICO conspiracy that encompasses every act, including every crime, wherever committed, alleged in the earlier New York indictments.

### THE NEW YORK INDICTMENTS

The New York prosecution of Gotti (Case No. 1:04–cr–00690–SAS, Southern District of New York) features an indictment, a superseding indictment, and a second superseding indictment (a fresh indictment preceded each of the three trials). Although the indictment changes somewhat with each iteration, the first count and second count of each indictment charge Gotti with a RICO conspiracy and with the substantive count of RICO racketeering. In other words, each of the three New York indictments alleges that Gotti and others in the "Gambino Organized

Crime Family" conspired to maintain and operate an interstate and international criminal enterprise engaged in a pattern of racketeering.

Although the Florida indictment repeatedly uses the name "Gambino Crime Family," which this order uses, the New York indictments add the word "Organized." However, by either name (or by any other name) *the Florida and the three New York indictments charge precisely the same crime and allege precisely the same criminal organization, for the operation of which Gotti is alleged in all four indictments (the three New York indictments and the Florida indictment) to have conspired in violation of RICO and to have racketeered in violation of RICO.*

The New York indictments allege that Gotti is a member of the Gambino Crime Family, which engages in murder, conspiracy to commit murder, attempted murder, robbery, extortion, labor racketeering, "loansharking," securities fraud, gambling, money laundering, and the like. The New York indictments allege that these incidents further the racketeering objectives of an:

> "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4)— that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce. The Gambino Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Gambino Organized Crime Family was referred to by its members and associates in various ways, including as a "cosa nostra," a "Family," and "this thing of ours."

The same as the Florida indictment, the New York indictments allege a complex but organized criminal structure and a broad criminal purpose for the Gambino Crime Family. The same as the Florida indictment, the New York indictments allege a governing structure for the Gambino organization that includes associates, soldiers, captains, and a consigliere. The New York indictments allege that Gotti has served in several subordinate roles in the organization and that, more recently and after the arrest, prosecution, and death of his father, Gotti has served as a member of a group, a "committee of captains," that controls the Gambino Crime Family as the organization undertakes to realize a profit, to avenge organizational and other grievances, and to effect individual gain for the participants.

The indictments allege that the Gambino Crime Family employs an array of both violent and non-violent means to achieve these and other criminal objectives. Similar to the Florida indictment, the New York indictments allege that the purpose of the Gambino RICO enterprise includes extortion, "loansharking," bookmaking, theft, robbery, money laundering, mail fraud, wire fraud, securities fraud, witness tampering, and murder. The indictments allege that the purpose of these criminal undertakings is to enrich the members of the Gambino enterprise, to augment the power and territory of the enterprise, and

to intimidate, threaten, and visit violence when necessary or useful.

Similar to paragraph 17 of the Florida indictment, paragraph 12, for example, of the third New York indictment (Doc. 199 in Case No. 1:04–cr–00690–SAS, Southern District of New York), also styled "The Pattern of Racketeering," contains a lengthy series of subparagraphs stating the crimes committed by Gotti's RICO enterprise in furtherance of the pattern of racketeering. Each of subparagraphs (a), (e), (g), and (h) alleges a violation of the criminal law of New York. Each of subparagraphs (b), (c), (d), (f), and (i) alleges a violation of the criminal law of the United States. Every statutory violation alleged in the New York indictments is alleged also in the Florida indictment.

The allegations of the New York indictments omit any boundary of time, place, or person and plainly encompass a RICO conspiracy conceived, agreed, and pursued nationally and internationally by Gotti, his co-conspirators, and their operatives in the Gambino Crime Family. The allegations in the New York indictments encompass every act alleged in the Florida indictment.

### THE MOTION TO TRANSFER

Gotti argues that the present indictment constitutes an oppressive attempt by the United States to pursue in more favorable circumstances the allegations in a now-dismissed indictment (actually, the prosecution entered a *nolle prosequi* with leave of court) that resulted in the three trials (none yielding a conviction; each yielding a deadlocked jury) in rapid succession in New York in 2005 and 2006. Gotti claims that the United States indicts him in the Middle District of Florida despite the lengthy and arduous history of prosecution in New York and despite the "utter lack of a palpable connection to Tampa."

Gotti claims that his wife and family, his friends and supporters, his business, his lawyers, his witnesses, "the overwhelming majority of the events at issue in this case," the physical evidence, the primary investigators, and the records (which include "thousands of hours of audio and video wiretap recordings") of and the participants in the three earlier trials reside in or near New York. Gotti notes that he remains detained without bond in the Middle District of Florida and consequently encumbered by the logistical disability attendant to both confinement and remoteness from his home and his means, including his principal means of defense. In this latter respect, Gotti objects energetically to the burdensome increment of expense and logistical burden anticipated as a result of conducting his defense in Tampa.

Gotti argues that his present attorneys, who successfully represented him in New York in the three predecessor trials, enjoy a singularly advantageous familiarity with the events that result in the indictment (rather, the series of indictments), with the pertinent legal proceedings, and with the persons, facts, and other means by which Gotti proposes to defend. Gotti argues that the travel, lodging, food, and other costs of defense in Tampa create an increment of expense "in excess of two hundred thousand dollars over and above the cost of trying the case in New York." However, Gotti adds, even if he stands the incremental cost of defense, the lack of ready accessibility to his lawyers penalizes and disadvantages his defense heavily and unfairly. Gotti further remarks that "New York is far more accessible than Tampa" for most participants in a prospective trial and that the District Courts for the Southern and Eastern Districts of New York are peculiarly able to dispose expeditiously of a protracted criminal prosecution.

Concluding the argument for transfer, Gotti presses at pages fifteen through twenty of his motion a "special factor" that in Gotti's view gravitates in favor of transfer to New York. Gotti alleges a pattern of witness intimidation, perpetrated in New York by agents of the United States who, among other things, issued grand jury subpoenas to intimidate and consequently discourage and deter persons otherwise inclined to offer character, corroborating, or other exculpatory testimony in Gotti's behalf and at his behest.

### THE UNITED STATES' RESPONSE

In response to Gotti's claim that the United States pursues an "epic quest to convict" Gotti and that the United States strategically selects the Middle District of Florida, a forum that the United States perceives as less problematic for conviction than New York, the United States asserts that the Middle District of Florida is a legally "proper" venue because Gotti's alleged criminal enterprise conspired to operate in the Middle District of Florida and behaved criminally in the Middle District of Florida in furthering the conspiracy. The United States maintains that the indictment is "the natural outgrowth of a local federal investigation that was reinvigorated in 2000" and that resulted, for example, in the prosecution in the Middle District of Florida of Ronald "One Arm" Trucchio, John E. Alite, Kevin McMahon, Michael Malone, Pasquale Andriano, and others convicted in Case No. 8:04–cr–348–T–24TGW (Bucklew, J.). The United States asserts that this investigation in the Middle District of Florida yielded "a trove of information and evidence concerning Gotti's criminal activity in Tampa and concerning his related criminal activity in other jurisdictions, including his leadership role in certain illegal drug trafficking activity and in the murders of George Grosso, Louis DiBono, and Bruce John Gotter-

up." (Of course, none of these murders occurred in Florida and no allegation appears that the murderers are in Florida.) After describing "the core" of the indictment, the United States elaborates:

The Indictment also alleges that, among other criminal conduct, GOTTI and others specifically attempted to prevent government officials from detecting (1) the identities and illegal activities of GCF Enterprise members, and (2) the location and amount of their criminal proceeds. The Indictment further charges that they engaged in conduct designed to obstruct and prevent the prosecution of any GCF Enterprise members. The Indictment alleges that, to further this objective, GOTTI and others participated in violent and obstructive behavior, including (1) murdering people perceived as potential witnesses, particularly members of organized crimes families, (2) bribing and threatening victims and witnesses, and (3) bribing and threatening jurors in state and federal court proceedings. To prove these charges, the government will show at trial that GOTTI and others were directly involved in illegal conduct designed to obstruct state and federal investigations and proceedings. For example, the government will prove that GOTTI orchestrated and directed elaborate jury tampering efforts, in violation of 18 U.S.C. § 1503, to thwart several federal criminal trials in the Eastern District of New York concerning GCF members, such as the federal criminal trials concerning GOTTI's uncle, Gene Gotti, Angelo Ruggiero, John Carneglia, and other GCF members and associates. Those defendants ultimately had to be tried more than once because of jury tampering efforts that ultimately resulted in the dismissal of a bribed jury and a verdict by an eleven-

person jury. The government anticipates presenting testimony showing how GOTTI and others leveraged a web of long-standing criminal relationships in and around New York City with corrupt local law enforcement officers, private investigators, employees of GCF members' businesses, and others, to identify, track, and contact seated jurors to accomplish, at least, in the short term, GOTTI's obstructive and illegal tampering efforts.

The United States dismisses Gotti's claims that Tampa is an unduly inconvenient forum for Gotti and asserts (although providing no estimate of either the aggregate number of prosecution witnesses or the number of witnesses living in Florida) (1) that more than twenty of the prosecution's subpoenaed witness are readily available in Tampa (the United States asserts that "[a]lmost all of them are lay witnesses who live in Florida or in places other than New York"); (2) that the discovery material is maintained in Tampa; (3) that the United States is unduly inconvenienced by transfer to New York, in part because the prosecution and investigation team is "located almost entirely in Tampa;" (4) that Tampa is a readily available travel destination with ample and convenient transportation, lodging, and other facilities; (5) that "security concerns" are lessened by maintenance of the action in Tampa; and (6) that the families of murdered persons identified in the indictment, although residing in New York, "concur" in the Tampa venue.

### DISCUSSION

Because three trials, each resulting in a deadlocked jury, have occurred in New York on the charges of RICO conspiracy and RICO racketeering, Gotti seeks to transfer to New York the prosecution of the present indictment, which charges Gotti with a RICO conspiracy. Gotti's motion presents a question under Rule 21(b), Federal Rules of Criminal Procedure, which permits a transfer "for the convenience of the parties and in the interests of justice." Before deciding the question presented, clarity requires an enumeration of the questions not presented.

First, this case presents no question of double jeopardy because no adjudication concerning Gotti's guilt or innocence occurred in New York in any of the three trials in the antecedent prosecution. The defense of double jeopardy is unavailable.

Second, this case presents no question whether, for example, the United States can charge a defendant with RICO conspiracy and later, in the same or another venue, charge the same defendant with RICO racketeering. In other words, this case presents no question whether the conspiracy and the substantive offense that the conspiracy anticipates are different offenses with different elements. Indisputably the RICO conspiracy and the RICO substantive offense are different offenses. As stated in *Pinkerton v. United States*, 328 U.S. 640, 643–44, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (citations omitted):

> The common law rule that the substantive offense, if a felony, was merged in the conspiracy, has little vitality in this country. It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. A conviction for the conspiracy may be had though the substantive offense was completed. And the plea of double jeopardy is no defense to a conviction for both offenses. It is only an identity of offenses which is fatal. A conspiracy is a partnership in crime. It

has ingredients, as well as implications, distinct from the completion of the unlawful project.

Third, this case presents no question whether the United States can charge a defendant with a conspiracy and an associated substantive crime in one jurisdiction and, after either conviction or acquittal on both, later charge the same defendant with other substantive crimes arising from the same conspiracy. For the reason stated in *Pinkerton* in the preceding quotation, certainly this is permissible.

■ Fourth, this case presents no question whether the United States can charge a defendant with the same statutory offense, for example, a RICO conspiracy, in two different indictments in the same or different jurisdictions if the respective crimes are based on distinct patterns of racketeering. This question arises from a tendency to conflate the statutory citation that supports the charge with the facts that engender the charge. Certainly distinct or distinguishable patterns or incidents of criminal activity warrant distinct charges, even if the distinct crimes violate the same statute; no question of double jeopardy attaches for that reason.

■ Fifth, this case presents no question whether, assuming (for a moment) the absence of the antecedent prosecution in New York, the United States might indict and prosecute Gotti in the Middle District of Florida for the RICO conspiracy alleged in the indictment. The Middle District of Florida is indisputably a "proper" venue for the alleged RICO conspiracy because the indictment alleges that a part of the crime occurred in the Middle District of Florida. The Sixth Amendment requires only that "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ."

As stated in *United States v. Schlei,* 122 F.3d 944, 975 (11th Cir.1997):

> A conspiracy may be prosecuted in the district where it was formed or in any district where an overt act was committed in furtherance of its objects. An overt act "may be that of only a single one of the conspirators and need not be itself a crime." "An individual conspirator need not participate in the overt act in furtherance of the conspiracy. Once a conspiracy is established, and an individual is linked to that conspiracy, an overt act committed by any conspirator is sufficient."

The Middle District of Florida is a "proper" venue for the alleged RICO conspiracy.

Sixth, this case presents no question about any of the many other patterns by which the United States might indict and maintain all or part(s) of this action in the Middle District of Florida. A RICO indictment may describe at least a four-tiered array of indictable criminal offenses from which the United States may choose. From top to bottom, the array may include a RICO conspiracy to racketeer (the RICO conspiracy), a RICO pattern of racketeering (the RICO substantive offense), a conspiracy designed to further the aim of the racketeering, and a discrete act or incident of a substantive offense as an object of, and in furtherance of, the conspiracy. Although other and more dazzling combinations and permutations of indictable offenses present themselves within the expansive scope of RICO, the United States may charge any or all of the offenses in any place where the particular offense occurred, subject always to the double jeopardy prohibition (and the applicable statute of limitation). Stated differently, this case presents no question where or in what combination the United States may charge an offense that consti-

tutes or furthers a conspiracy so long as the United States charges the crime at a site of the crime's occurrence (in the Sixth Amendment sense) and so long as the United States charges no offense after the same offense is earlier adjudicated.

During argument at the hearing on Gotti's motion, the United States cited *United States v. Ruggiero*, 754 F.2d 927 (11th Cir.1985). Much like Gotti, Ruggiero was indicted in the Southern District of New York for both a RICO conspiracy and RICO racketeering, that is, indicted for both the conspiracy and the substantive RICO violation. Ruggiero was convicted in New York of conspiring, for which he was sentenced to fifteen years, but acquitted of the substantive count of RICO racketeering. The United States afterward indicted Ruggiero in Florida for both a RICO conspiracy and RICO racketeering. Ruggiero sought dismissal based on double jeopardy. The district court denied the motion, and Ruggiero appealed. Affirming my colleague Judge Castagna's denial of Ruggiero's motion based on double jeopardy, the Eleventh Circuit invoked the five factors elaborated in *United States v. Russotti*, 717 F.2d 27, 33 (2d Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984), for "determining whether the indictments charged the existence of one 'pattern of racketeering' or two different 'pattern[s].'" 754 F.2d at 932. *Russotti*'s five factors are:

> (1) whether the activities that allegedly constituted two different RICO "patterns" occurred during the same time periods; (2) whether the activities occurred in the same places; (3) whether the activities involved the same persons; (4) whether the two indictments alleged violations of the same criminal statutes; (5) whether the overall nature and scope of the activities set out in the two indictments were the same.

Although the present motion presents no explicit issue of double jeopardy, the *Russotti* analysis in *Ruggiero* informs the resolution of the present motion. Analysis of the first four factors, applied in the instance of the New York and Florida indictments in the present series of Gotti prosecutions, reveals significant or complete "overlap." The alleged activities occurred at the same time, in the same places, and as a result of actions by the same persons, and the indictments charge a violation of the same criminal statute.

*Ruggiero* applies the fifth factor, characterized in *Ruggiero* as "the fifth and most important factor," and concludes that the activities alleged in the New York indictment in *Ruggiero* involved the "Bonnano Family" but the activities alleged in the Florida indictment involved a " 'joint venture' by members of several La Cosa Nostra families to conduct various criminal activities on the west coast of Florida." *Ruggiero* finds that the indictments each allege a distinct pattern of racketeering, that is, *Ruggiero* finds "no overlap" of the patterns of racketeering alleged in the two indictments in that case.

No fair-minded and reasonable person assessing the allegations of the New York indictments and the Florida indictment against Gotti in the present instance could find "no overlap." In fact, any fair-minded person finds either complete "overlap" or "overlap" so nearly complete as to render any perceived difference (real or imagined, more likely the latter) both legally and factually inconsequential to the governing issue of venue. In other words, application of the *Ruggiero* double jeopardy standard to the New York indictments and the Florida indictment against Gotti reveals that, if an adjudication had occurred in New York either for or against Gotti on the RICO conspiracy (or if the indictment remained pending), double jeopardy would

bar the present indictment for RICO conspiracy.

■ The present motion to transfer is not resolved by *Ruggiero* and *Russotti* or by the application of the immunity from double jeopardy. As stated earlier, Rule 21(b) governs the present challenge to venue. The Rule 21(b) determination answers to "convenience" and the "interests of justice," which are informed in turn by the factors enumerated in *Platt v. Minnesota Mining and Manufacturing Company*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), which factors are neither exhaustive nor exclusive:

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

■ A review of the argument between the United States and Gotti about the *Platt* factors yields strongly influential conclusions. Gotti and his family and friends are in and around New York. Gotti's personal real estate business, understandably disrupted by his absence, is in New York. The witnesses in a case of this nature and at this stage of the prosecution are necessarily speculative in number and location, but undoubtedly the bulk of the witnesses to the RICO conspiracy charged in the Florida indictment are in and around New York or, at least, not singularly convenient to Tampa. The bulk of the events alleged in the indictment occurred in and around New York (as well as New Jersey and Pennsylvania), although some are alleged to have occurred in Florida.

The defense of this case in Florida incontestably requires some bothersome increment of expense (probably in the vicinity of a quarter of a million dollars) to Gotti over the cost of defense in New York. Gotti's lawyers, who have defended him repeatedly and successfully in New York on the same charge asserted in Florida, practice and reside in New York. Both New York and Tampa are easily accessible but, obviously, access to Tampa is an increased burden for Gotti, his counsel, his family and friends, and his witnesses. Either the New York or the Florida court can expeditiously process the case. In sum, although the parties might quibble about the details, no disinterested observer can doubt that defense of the present indictment in Florida visits on Gotti a material increment of financial, personal, and legal burden over defense of the same indictment in New York.

The *Platt* factors include "any special element" that might affect the proposed transfer. In this instance, a "special element," in fact a singular element, appears: the Florida indictment charges the same RICO conspiracy against which Gotti has defended himself three times in New York. The present indictment poses the troubling question whether after three unsuccessful prosecutions in New York of a RICO conspiracy (along with other charges against Gotti and charges against other defendants) the United States can, so to speak, just pull up by the roots the indictment the United States cultivated for years in New York and summarily re-pot the whole operation in Florida, hoping for more favorable conditions and a more favorable result and dismissing as inconsequential the resulting expense and dislocation visited upon Gotti. Of course, the United States in this instance accompanies this re-potting by flavoring the allegations with the details of some events in Florida. But the

RICO conspiracy charged in the Florida indictment is unmistakably the same RICO conspiracy charged in New York, the alleged local incidents notwithstanding.

The United States protests at the November 20, 2008, hearing that the indictment is maintainable in Florida because the United States Attorney for the Middle District of Florida has the power, the right, and the duty to prosecute in Florida a crime committed in Florida (including a conspiracy, any part of which occurred in Florida). True, but some reservations appear. First, the United States Attorney has charged no crime that occurred only in the Middle District of Florida, although according to the Florida indictment many occurred in Florida. The United States Attorney has chosen oddly to charge only a crime, specifically, a RICO conspiracy, that by any measure occurred largely outside Florida and that has been repeatedly charged and tried before a jury elsewhere. In other words, without implicating the Rule 21(b) questions of "convenience" and "the interests of justice," the United States Attorney could have charged the discrete crimes occurring in Florida and omitted the charge of an interstate and international RICO conspiracy, against which charge Gotti has defended successfully and successively in New York. However, instead of charging any of a basket of substantive and conspiracy offenses that the indictment alleges occurred in Florida and that are available for indictment and prosecution in Florida, the indictment instead alleges the single RICO conspiracy offense charged and tried repeatedly and without success in New York.

## CONCLUSION

The United States protests that the provenance of the present indictment inheres in events in the Middle District of Florida and that by the present indictment the United States merely pursues crime indigenous to the Middle District of Florida. Although the subjective intent of the prosecution remains necessarily unknown and unknowable with certainty, the allegations of the indictment are less opaque—are, in fact, transparent. The United States has forborne to charge in the Florida indictment a single crime indigenous to Florida, although the United States claims (persuasively) to have directed extensive and protracted investigative effort to crimes indigenous to Florida. The Florida crimes, apparently known to and putatively provable by the United States, appear nowhere in the indictment as a charged offense but appear only as allegations in support of the over-arching RICO conspiracy, a crime charged and tried repeatedly in New York—with results frustrating to the United States. In this context, the charging decision of the United States, apparently unaccountable on neutral principles, creates the unmistakable and disquieting impression of "forum shopping," contrary to the sound principles incorporated into Rule 21(b).

The singular notoriety of this defendant, his apparently acknowledged history of complicity in the malignancies of organized crime (before his claimed "withdrawal"), and perhaps the cumulative frustration of law enforcement contribute to the temptation to extend to Florida the "quest" to convict Gotti. Nonetheless, standing before an Article III judge of the United States in a United States District Court governed by the Constitution and laws of the United States, Gotti is merely another defendant, presumed innocent (in fact, unsuccessfully prosecuted three times for the charged crime) and unreservedly entitled to the protection of the principles codified in Rule 21(b), which features no exclusion for a defendant, even a conspicuous one, charged with participation in organized crime.

Although no verdict or other adjudication has occurred in New York with respect to the charged RICO conspiracy and, therefore, the bar of double jeopardy is unavailable to Gotti to defeat the Florida charge, the "convenience" and "interests of justice" provisions of Rule 21(b) decisively commend both the transfer of this prosecution to New York and the interruption of this attempt by the United States to pursue in Florida an indictment that results in material and unwarranted inconvenience and that stands athwart the manifest interests of justice.

Gotti's motion to transfer is **GRANTED,** and this action is **TRANSFERRED** to the Southern District of New York. The clerk is directed to **CLOSE** the file.