572 So.2d 522 (1990)
Jack R. DONOVAN, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1810.
District Court of Appeal of Florida, Fifth District.
November 21, 1990.
Rehearing Denied January 10, 1991.
*523 James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for appellee.
*524 W. SHARP, Judge.
Jack Donovan appeals from adjudications of guilt and sentences for numerous offenses. A jury found him guilty of all thirty-one (31) counts with which he had been charged as a result of his responsibility for the fraudulent creation and deposit of over a thousand credit card vouchers. He disputes his convictions and sentences on several grounds. We agree that double jeopardy violations occurred when he was convicted of both organized fraud and grand theft, and of more than one racketeering (RICO) offense. Additionally, we find that costs were improperly imposed.

FACTS
The appellant was the founder and head of a bass fishing organization, World Bass Association (WBA), which sold memberships nationwide. Lifetime memberships ($200) and video-club memberships ($150) were available, but most of the members had apparently purchased relatively inexpensive, shorter term memberships.
The organization was almost out of funds when the appellant gave instructions to Bruce Goodwin (who apparently had done some work for WBA before) which radically departed from WBA's customary fund-raising practices. Instead of informing the WBA employees who had previously carried out membership solicitations, the appellant gave Goodwin WBA membership lists (which included credit card numbers of members who had paid by credit card), along with a credit card imprinter. Goodwin took the lists and imprinter home with him and spent Mother's Day weekend (May 7-8, 1988), helped by members of his family, filling out credit card vouchers in great numbers. No contact was made with WBA members; charges for higher priced memberships were simply placed, without members' authorization, on credit card vouchers filled out with their credit card numbers.
The appellant testified that he had told Goodwin to call members before charging their cards; there was also testimony that he gave Goodwin an access number allowing long distance calls made at Goodwin's home to be charged to the WBA telephone account. Goodwin claimed that he had been distracted and had misunderstood the instructions which told him to make telephone calls to members before charging new memberships to their cards, but he also testified that he would not have written up the credit card slips without calling the card holders if the appellant had told him to call them. The appellant and Goodwin spoke with one another by telephone at least ten times while Goodwin was processing the credit card vouchers at his home.
WBA had an account at Southeast Bank in Deltona. Evidence indicated that on May 11, 1988, about $28,000 in credit card vouchers created by Goodwin were deposited in that account. Then some $33,600 in vouchers was deposited on May 16, around $36,000 on May 17, and about $36,000 on May 18. The bank processed about 1,300 credit card vouchers. The monies were immediately credited to WBA's account. The deposits were made in spite of the fact that by May 16 (a Monday), members had begun calling WBA headquarters contesting the credit card charges. The appellant took some of those calls.
On May 18, 1988, the appellant, who was at Southeast Bank trying to borrow money, was told by a bank official, "this credit card thing is starting to blow up." On the same day the bank's vice-president for risk management froze the WBA account, and the appellant called him and tried to convince him that the credit card vouchers were legitimate.
WBA's former attorney testified that he had heard the appellant make two telephone calls to Goodwin's home while Goodwin was being interrogated by police. The appellant, in effect, urged Goodwin not to meet with or talk to the police, and said, "Don't tell them I told you to make those charges to the cards. Tell them that I told you to call the people or that you got mixed up."
Completed but unprocessed credit card slips were recovered from the appellant's residence by officers.
The appellant was convicted and sentenced as follows:
*525 Organized fraud, section 817.034(3), (4) Florida Statutes (1987): No sentence imposed.
First degree grand theft, section 812.014(1), (2)(a), Florida Statutes (1987): 30 years imprisonment, $10,000 fine.
Three counts of second degree grand theft, section 812.014(1), (2)(b), Florida Statutes (1987): 15 years concurrent probation on each count, consecutive to the 30 years imprisonment for first degree grand theft.
Eleven counts of forgery, section 831.01, Florida Statutes (1987): 5 years probation on each count, concurrent with each other.
Eleven counts of uttering a false instrument, section 831.02, Florida Statutes (1987): 5 years probation concurrent with each other and consecutive to the probation on the forgery counts.
Four counts of racketeering (RICO), sections 895.02(3), 895.03(1), Florida Statutes (1987): 30 years imprisonment on each count to be served concurrent with each other and the 30 years for first degree grand theft, plus four fines of $5,000, one for each RICO conviction.
As a condition of probation, the appellant was ordered to pay restitution.
The trial court also ordered the appellant to pay costs.

CIRCUMSTANTIAL EVIDENCE OF INTENT
Contrary to the appellant's argument we find that the circumstances offered ample proof of his criminal intent to support his convictions, and that the trial court was correct in denying his motion for judgment of acquittal. The evidence does not support any reasonable hypothesis of innocence. State v. Fort, 380 So.2d 534 (Fla. 5th DCA 1980).

DOUBLE JEOPARDY: ORGANIZED FRAUD AND GRAND THEFT
The appellant is correct that his conviction for both organized fraud and grand theft, violate his constitutional right not to be placed twice in jeopardy for the same offense. The reason is that all the elements of theft are included within the elements of organized fraud, making them, for double jeopardy purposes, the "same" offense.
The appellant contends that the statute which defines and prescribes punishments for the offense of organized fraud, section 817.034, Florida Statutes (1987), was intended by the legislature to consolidate and "contain" the offenses of theft, forgery, and uttering a false instrument. The real question is whether organized fraud is the same offense as any or all of those other offenses.
The legislature is free to create multiple different offenses arising from the same act or transaction, and if statutes unambiguously create separate offenses no double jeopardy question arises when a person is convicted of more than one of those offenses based on the same act. See, e.g., Carawan v. State, 515 So.2d 161 (Fla. 1987). If statutes do not make clear the legislative intent to create separate offenses, then section 775.021, Florida Statutes (1989), "Rules of construction," comes into play.[1] Subsection 775.021(4) provides:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set *526 forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
In applying the test set out in the quoted section, the courts look only to the statutory elements of each offense and not to the actual evidence presented at trial or the facts as alleged in a particular information. State v. Carpenter, 417 So.2d 986, 988 (Fla. 1982).
We must analyze the statutes in question to determine whether each offense in question has elements which the others do not.[2]
Section 817.034(4)(a), Florida Statutes (1987), provides that, "Any person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud ..." Subsection 817.034(3)(d) defines a "scheme to defraud" as "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." According to subsection 817.034(3)(c), "property" means anything of value, and under subsection 817.034(3)(b), "obtain" means "temporarily or permanently to deprive any person of the right to property or a benefit therefrom, or to appropriate the property to one's own use or to the use of any other person not entitled thereto."
The offense of organized fraud, then, has these elements: (1) Engaging in or furthering a systematic, ongoing course of conduct (2) with (a) intent to defraud, or (b) intent to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of a future act, (3) resulting in temporarily or permanently depriving any person of the right to property or a benefit therefrom, or appropriating the property to one's own use or to the use of another person not entitled thereto.
The elements of theft, section 812.014, are (1) knowingly (2) obtaining or using, or endeavoring to obtain or use, property of another (3) with intent to deprive the person of a right to the property or a benefit therefrom, or to appropriate the property to one's own use or to the use of any person not entitled thereto.
The elements of theft are all included in the elements of organized fraud even though identical terminology is not used in the two statutes. One cannot be convicted of both organized fraud and theft for the same act without a double jeopardy violation.
On the other hand, the elements of forgery, section 831.01, Florida Statutes (1987), may be summarized as (1) falsely making, altering, forging, or counterfeiting various kinds of papers (2) with intent to injure or defraud any person. Organized fraud does not require any kind of forgery, and requires proof of elements which the crime of forgery does not, and therefore is a separate offense. The same is true of uttering false instruments, section 831.02, Florida Statutes (1987), which also must involve a false, forged, altered or counterfeited writing.
For those reasons we conclude that the appellant's convictions for organized fraud, forgery, and uttering false instruments were proper, but that he could not lawfully also be convicted of theft. In keeping with the usual practice, we reverse the lesser offenses and affirm the greater offense (organized fraud). See, e.g., State v. Barton, 523 So.2d 152 (Fla. 1988); Bell v. State, 437 So.2d 1057 (Fla. 1983); Wilcher v. State, 524 So.2d 1105 (Fla. 3d DCA 1988); Young v. State, 506 So.2d 13, 15 (Fla. 5th DCA), cert. denied, 515 So.2d 231 (Fla. 1987); Gordon v. State, 457 So.2d 1095 *527 (Fla. 5th DCA 1984), approved, 478 So.2d 1063 (Fla. 1985).
On remand, the trial court may resentence the appellant on the organized fraud conviction (for which no sentence was imposed originally) to a punishment which does not exceed the total punishment originally imposed for that conviction and the grand theft convictions. Although North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), held that it would be a denial of due process to impose a heavier sentence on resentencing in order to punish a defendant for getting his original conviction set aside, that opinion also stated that the Constitution does not absolutely bar a more severe resentencing if vindictiveness does not play a part. In Laster v. State, 564 So.2d 536 (Fla. 5th DCA 1990), we recently referred to the need for objective information in the record to justify an increased sentence on resentencing and to overcome a presumption of vindictiveness.
In the present case we deal with a not unique situation in which the original sentence for a greater offense is less (in this case nonexistent) than the original sentences for lesser offenses. There would be a miscarriage of justice, and an obvious thwarting of the original intentions of the sentencing court, if our elimination of the lesser convictions left the appellant with no sentence at all. There is no trace here of unconstitutionally punishing the appellant for pursuing his rights, but rather there is the necessity of assuring that he does not escape lawful punishment for a crime of which he was properly convicted. Our reversal of convictions for lesser offenses is the new factor which now opens the way to imposition of a sentence for the greater offense, and there is no arguable violation of due process rights as long as the sentence for the surviving offense is no greater than the combined original sentences imposed for it and the lesser offenses it subsumed. See Baggett v. State, 302 So.2d 206 (Fla. 2d DCA 1974).[3]Compare Morganti v. State, 557 So.2d 593 (Fla. 4th DCA 1990).

DOUBLE JEOPARDY: RICO
The issue here is whether the appellant engaged in more than one "pattern of racketeering activity" under the Florida Racketeer Influenced and Corrupt Organizations Act (RICO), chapter 895, Florida Statutes (1987), which is patterned after the federal RICO statute, 18 U.S.C. §§ 1961-68.
The heart of the RICO offense is contained in section 895.03, Florida Statutes (1987), and may be summarized for purposes of the instant case as follows: It is unlawful for one who has with criminal intent received any proceeds derived from "a pattern of racketeering activity" to use or invest any part of those proceeds in real property or in the establishment or operation of any enterprise.
"Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided ... that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.
§ 895.02(4), Fla. Stat. (1987).
The simplified crux of the RICO offense is that a person must (1) establish a "pattern" by being involved in at least two offenses which have something adequately in common, and (2) use proceeds derived therefrom in real property or an enterprise. The "pattern" does not arise from the manner of use of the proceeds, as the appellee suggests, but rather in the commission of a series of crimes which have something in common.
In the instant case, the Amended Information charged the appellant with several *528 counts alleging four separate patterns of racketeering.[4]
Count XXXII charged that on or about May 11, 1988: (A) the appellant received proceeds from a pattern of racketeering activity which included obtaining $50,000 or more between April 16 and May 20, 1988, by making unauthorized charges against Visa and Mastercard accounts of about 1,338 people, some of whom are named in the Information; (B) the appellant obtained U.S. currency belonging to Southeast Bank; (C) uttered a false credit card charge slip with intent to defraud the Southeast Bank and Charles Paterson; (D) same as (C), naming as victim Rex Burdick; same as (C), naming as victim George Crook. Count XXXII adds that the appellant used or invested some of the proceeds of the above crimes in the WBA.
Count XXXIII is virtually the same as Count XXXII except that the date May 16, 1988 replaces May 11 (although the inclusive period of creating the unauthorized credit card charges remains April 16-May 20, 1988), and the names Robert Mercer, Joseph St. Peter, and Pam or Tim Cross appear as victims.
Counts XXXIV and XXXV contain the same kind of variations, with new victim names and the dates of May 17, 1988 and May 18, 1988 respectively.
The effect of the Information is that the appellant is charged with four separate "patterns" of racketeering, each consisting of depositing a different set of bogus credit card vouchers at Southeast Bank on a different day.
Because the essence of a single RICO offense is a series of appropriately related offenses, we conclude that the State unjustifiably tried to chop various components of a single pattern into separate patterns. The various "incidents of racketeering conduct" (in this case the creation of false credit card charges to credit cards belonging to many different people) which create the "pattern" cannot justifiably be counted as discrete patterns.
Because the Florida and federal RICO statutes are substantially the same, we refer to federal case law for guidance in interpreting Florida's act. See Boyd v. State, 15 F.L.W. 489 (Fla. 3d DCA Feb. 20, 1990).
United States v. Ruggiero, 754 F.2d 927 (11th Cir.), cert. denied, 471 U.S. 1127, 105 S.Ct. 2661, 86 L.Ed.2d 277 (1985), supports our conclusion, recognizing five factors for determining whether more than one pattern exists:
1. Whether the activities allegedly constituting two RICO "patterns" occurred during the same time periods;
2. Whether the activities occurred in the same places;
3. Whether the activities involved the same persons;
4. Whether the same criminal statutes were allegedly violated; and
5. Whether the overall nature and scope of the activities were the same.
754 F.2d at 932, citing United States v. Russotti, 717 F.2d 27 (2d Cir.1983), cert. denied sub nom., Piccarreto v. United States, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984); United States v. Dean, 647 F.2d 779 (8th Cir.1981), modified on other grounds, 667 F.2d 729 (8th Cir.) en banc, cert. denied, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).
The five factors are modified versions of the factors long used to determine whether multiple indictments charge the existence of one or several conspiracies. United States v. Ruggiero. We held in Cutrell v. State, 560 So.2d 354 (Fla. 5th DCA 1990), that a defendant was unlawfully convicted of two conspiracy charges when the evidence showed that there was one overall conspiracy to traffic in cocaine by making a series of airplane trips to and from Colombia during May and June, 1985, as distinguished from a series of separate and distinct conspiracies each relating to one airplane trip.[5] The same principle applies in the case before us.
We find that the appellant's activities which gave rise to the RICO charges occurred *529 within a short time period, occurred in the same places, involved the same perpetrators (though many different victims were involved), violated the same criminal statutes, and were the same in overall nature and scope  thereby constituting only one pattern of racketeering activity.
The State argues that because the proceeds were "invested" (credit card vouchers deposited into the WBA bank account) on four different occasions there were four different RICO "patterns." This view is incorrect for three reasons. First, the RICO act differentiates the element of a pattern of racketeering activity (which gives rise to "proceeds") from the element of using or investing those proceeds. Section 895.03 does not make each incident of use or investment of proceeds of the same pattern of racketeering activity a separate RICO offense. Second, depositing the vouchers in the bank was the necessary step to obtain or steal the proceeds. It was not an investment, as a later withdrawal and application to purchase another asset would have been. Third, even when the deposits of vouchers in this case are characterized as incidents of racketeering activity rather than investment of proceeds, the incidents still fit the criteria for a single pattern.

COSTS
We reverse the imposition of costs because the appellant was not given any notice that they would be assessed. Harriel v. State, 520 So.2d 271 (Fla. 1988); Mays v. State, 519 So.2d 618 (Fla. 1988); Jenkins v. State, 444 So.2d 947 (Fla. 1984). As we stated in Bryant v. State, 546 So.2d 762, 763 (Fla. 5th DCA 1989), irrespective of the statute under which costs are assessed, the trial court "must provide adequate notice of such assessment to the defendant with a full opportunity to be heard and to object" or there is fundamental error because of denial of procedural due process.
In the case before us, the imposition of costs was not announced by the court when the appellant was adjudicated guilty or when he was sentenced. The judgments entered on the day of trial were simply marked to indicate that costs had been imposed. The State contends that the appellant was put on notice by those documents and had until his sentencing hearing about six weeks later to object. The appellant argues that the judgments informed him after the fact that costs had been imposed  and that the opportunity to object to a fait accompli is not the same as notice.
This case differs from Bryant in that Bryant and his counsel were informed that costs would be imposed during the sentencing hearing and made no objections at the time even though they could have done so. In Bryant there was adequate notice to enable the defendant to object and be heard prior to assessment of costs. In the instant case there was no prior notice at all.
For the same reason, the facts before us are distinguishable from those in Bull v. State, 548 So.2d 1103 (Fla. 1989), in which the supreme court approved the imposition at a sentencing hearing of a lien for attorney's services where the trial judge "gave petitioner thirty days to object and to ask for a hearing." 548 So.2d at 1104.
Because Donovan was given no notice at all before entry of judgment imposing costs, we strike the award of costs without prejudice to a new determination of the matter by the trial court after proper notice and opportunity to be heard is afforded the appellant. See McMahon v. State, 561 So.2d 1284 (Fla. 5th DCA 1990); Clark v. State, 560 So.2d 264 (Fla. 5th DCA 1990).
We affirm the conviction for organized fraud, reverse all of the convictions for grand theft, reverse all but one of the four RICO convictions, affirm the remaining RICO conviction, affirm the forgery convictions, affirm the conviction for uttering a false instrument, strike costs, and remand for resentencing.
AFFIRMED in part, REVERSED in part, and REMANDED for resentencing; COSTS STRICKEN.
DAUKSCH and GOSHORN, JJ., concur.
NOTES
[1] The current version of section 775.021 became effective via chapter 88-131, section 7, Laws of Florida, on July 1, 1988, after the appellant's crimes were committed, but the previous version also contained the "Blockburger test"  Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)  embodied in subsection (4) of the current version.
[2] Of course if the appellant had committed separate acts which gave rise to convictions for the same offense, the procedure would be unnecessary, but in this case the acts which gave rise to the theft convictions were the same as those which gave rise to the organized fraud conviction.
[3] Our holding leaves room for a resentencing to exceed an original total sentence where an additional new factor justifies it. See Baggett.
[4] The Information is summarized here in very simplified form.
[5] See also Alvarez-Botero v. State, 562 So.2d 783 (Fla. 5th DCA 1990), a related case.