# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

—————————————————

No. 1D17-3330

—————————————————

MELVIN L. PRYEAR,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

—————————————————

On appeal from the Circuit Court, Escambia County.
W. Joel Boles, Judge.

February 28, 2018

B.L. THOMAS, C.J.

Appellant, Melvin L. Pryear, appeals an order denying his postconviction motion brought pursuant to Florida Rule of Criminal Procedure 3.850. For the reasons discussed below, we affirm.

This case arose from a traffic accident wherein a semi-truck struck Appellant's vehicle, resulting in the death of the Appellant's passenger and damage to the semi-truck. The evidence reflected that Appellant was traveling northbound on the highway when he made a left turn in front of the semi-truck, which was traveling southbound. Both vehicles had a green signal without any turn arrows illuminated.

Testifying at trial were two sisters who witnessed the accident. One sister, Janice Spencer, testified that when she saw

Appellant's car start to turn, she said to herself, "Don't go, don't go," because the semi-truck was too close for the oncoming car to safely make the turn. The other sister, Sharon Watson, testified that the semi-truck was moving fast, estimating that the truck appeared to be "doing every bit of [the 40 or 45 miles per hour speed limit] coming through the intersection."

Other eye witnesses testified that Appellant smelled of alcohol and had beer cans in his car. The traffic homicide investigator testified that, hours later, Appellant's eyes were still bloodshot and watery and his speech was slurred. The investigator opined that Appellant was at fault in the accident, because he violated the semi-truck's right-of-way by making a left turn in front of the truck when he should have yielded to oncoming traffic. A highway patrol trooper testified that a blood draw was conducted at the hospital, and a Florida Department of Law Enforcement laboratory analyst testified that she tested the sample. Her report was introduced into evidence, reflecting that Appellant's blood alcohol level was .196 grams per four milliliters of blood, or more than twice the legal limit.

Following the jury trial, Appellant was convicted of DUI manslaughter and DUI with property damage and sentenced to a total of 15 years in prison. His convictions and sentences were affirmed on appeal. *Pryear v. State*, 185 So. 3d 1238 (Fla. 1st DCA 2016). Appellant then filed the instant rule 3.850 motion, raising eight claims, which the lower court summarily denied.

In Appellant's first claim, he argued that his attorney was ineffective for failing to renew his objection to the State's use of a peremptory challenge to strike an African-American juror. Appellant alleged that the State's race-neutral reason for the strike applied equally to a white juror; therefore, it was pretextual as a matter of law.

A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668, 690 (1984). To prove ineffective assistance, a defendant must allege 1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms, *see id.* at 690; and 2) that the defendant's case was prejudiced by these acts or omissions such that the outcome of the case would have been

2

different, *see id.* at 692. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The defendant must demonstrate a likelihood of a different result which is substantial and not just conceivable. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "The prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal." *Strobridge v. State*, 1 So. 3d 1240, 1241 (Fla. 4th DCA 2009) (citing *Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007)).

A claim of ineffective assistance of counsel arguing counsel's failure to raise a *Neil*[1] objection is not normally a basis for postconviction relief. *Jones v. State*, 10 So. 3d 140, 141-42 (Fla. 4th DCA 2009). This is true, because the prejudice prong cannot be proven absent some indication that the jury that actually served was biased. *See Yanes v. State*, 960 So. 2d 834, 835 (Fla. 3d DCA 2007); *Jenkins v. State*, 824 So. 2d 977, 984 (Fla. 4th DCA 2002).

Here, even if Appellant could establish that counsel performed deficiently for failing to renew his objection to the strike, he failed to establish that this omission affected the outcome of his trial, and not just the possible outcome of his appeal. Furthermore, the transcripts from voir dire reveal no indication that the juror who actually served was biased, as he joined with the rest of the prospective jurors in indicating that he could be impartial and properly apply the burden of proof and presumption of innocence. Under these circumstances, this claim was properly denied.

In Appellant's second claim, he argued that his attorney should have moved to strike the highway patrol trooper's improper opinion testimony that Appellant was at fault in the accident and that the trooper had "other circumstances" that led him to believe that Appellant was intoxicated. Appellant alleged that this testimony invaded the province of the jury and bolstered

---

[1] *State v. Neil*, 457 So. 2d 481, 486-87 (Fla. 1984) (discussing procedures for challenging discriminatory use of peremptory strikes).

the testimony of the State's witnesses who testified that Appellant was impaired at the time of the accident. Appellant asserted that it also suggested that law enforcement had other evidence which was not presented to the jury.

The challenged testimony occurred in the context of cross-examination. Defense counsel asked whether Appellant's bloodshot eyes and the scent of alcohol on his breath provided the basis for the belief that Appellant was intoxicated at the time of the accident. The trooper replied, "He was also at fault for causing a fatality." Defense counsel then asked, "So you're saying [Appellant] was at fault, but the investigation wasn't completed was it?" The trooper responded, "No, but we had the circumstances." The trooper also agreed that he did not witness the accident, and had not yet spoken to witnesses when he came to this conclusion.

As an initial matter, the trooper did not state that he had "*other* circumstances" to back up his beliefs, but rather, he had "*the* circumstances," referring to the circumstances of the accident. Thus, it is clear that the trooper did not suggest that law enforcement had evidence suggesting Appellant's culpability that was not presented to the jury.

With regard to the testimony about Appellant's intoxication and whether he was at fault in the accident, even assuming there was a basis for an objection, Appellant failed to show prejudice: Witnesses at the scene of the accident observed beer cans in Appellant's car and smelled alcohol on his person; the traffic homicide investigator testified that Appellant's eyes were bloodshot and watery and his speech was slurred; and a blood draw was conducted, and Appellant's blood alcohol level was determined to be .196. Thus, there is no reasonable probability that the outcome of the trial would have been different if the trooper's testimony regarding Appellant's intoxication had been stricken.

Furthermore, an eye witness indicated that when Appellant's car started to move through the intersection, she was afraid, because the semi-truck was too close for Appellant to safely make the turn. The traffic homicide investigator testified

4

that Appellant was at fault in the accident, because he violated the truck's right-of-way.[2]  Given this evidence, combined with the evidence of intoxication, there is no reasonable probability that the outcome of the trial would have been different, even  if the trooper's testimony that Appellant was at fault in the accident had been stricken.

In Appellant's third claim, he argued that his attorney should have moved for judgment of acquittal on the basis that the State failed to prove the element of impairment.  He alleged that his attorney should have argued the evidence of his blood alcohol level was not properly introduced, as the laboratory analyst who tested the blood sample did not lay a proper predicate for the introduction of the results.

"In moving for a judgment of acquittal, a defendant 'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" *Beasley v. State*, 774 So. 2d 649, 657 (Fla. 2000) (quoting *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974)).  "A motion for judgment of acquittal should only be granted if there is no view of the evidence from which a jury could make a finding contrary to that of the moving party." *Jeffries v. State*, 797 So. 2d 573, 580 (Fla. 2001).  "In resisting a judgment of acquittal, the state can rely on any evidence adduced, even evidence later determined to have been erroneously admitted." *State v. Brockman*, 827 So. 2d 299, 302 (Fla. 1st DCA 2002).  A defendant is not entitled to a judgment of acquittal "merely because evidence that is critical to the court's finding of sufficiency was improperly admitted." *Barton v. State*, 704 So. 2d 569, 573 (Fla. 1st DCA 1997).

Here, when the State introduced the lab report reflecting that Appellant's blood alcohol level was .196, defense counsel indicated that he had no objection.  Having failed to object to this evidence, he was not entitled to challenge its admission after the fact in a motion for judgment of acquittal.  Furthermore, even if

---

[2] Appellant raised no argument as to the propriety of this testimony.

5

this evidence was not properly admitted, it could be relied upon to deny any such motion. Under these circumstances, this claim was properly denied.

In Appellant's fourth claim, he argued that his attorney was ineffective for failing to object to erroneous jury instructions. He alleged that the trial court should not have instructed the jury on the statutory presumption of impairment. This claim was properly denied for the reasons already discussed in connection with Appellant's third claim.

In Appellant's fifth claim, he argued that his attorney was ineffective for failing to object to an improper closing argument. He alleged that the prosecutor's argument of no reasonable doubt, because the evidence was not contradicted, suggested that the defense had a burden to produce evidence. Improper burden shifting occurs when the State invites the jury to convict for a reason other than the fact that the State has proven its case beyond a reasonable doubt. *State v. Scott*, 66 So. 3d 923, 930 (Fla. 2011) (citing *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998)). This can occur where the State comments on the defendant's failure to produce evidence that would refute an element of the charge. *Id.* (citing *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991)).

However, even when the State makes an improper argument, the bar for showing prejudice is high. "If 'improper comments by a prosecutor do not constitute reversible error, the defendant 'cannot demonstrate the prejudice requisite for a successful ineffective assistance of counsel claim" relating to counsel's failure to object to the comments." *Taylor v. State*, 120 So. 3d 540, 551 (Fla. 2013) (quoting *Lugo v. State*, 2 So. 3d 1, 17 (Fla. 2008)). To show entitlement to a new trial based upon improper prosecutorial comments, such comments must:

> either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

6

*Walls v. State*, 926 So. 2d 1156, 1157 (Fla. 2006) (quoting *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994)).

Here, the prosecutor argued:

> So I really must ask you to look at the evidence that's been presented through trial yesterday and today. Apply the law that I've touched upon and you'll be further instructed on, and use your common sense. What that's going to tell you is that the defendant was driving the vehicle, that the defendant had a blood alcohol level of .196 or higher, that he had marijuana in his system at the time he was driving, that he pulled out in front of that truck that caused not only damage to the truck and the Sebring he was driving, but it also caused and contributed to the death of Ms. McCarty. If he doesn't do that, that crash doesn't happen and she doesn't die. He caused or contributed to her death.
>
> *That evidence is—won't be contradicted, and because it won't be contradicted, there is no reasonable doubt as far as his guilt.* He is guilty as charged for DUI, driving under the influence, manslaughter and driving under the influence, damage to property. Thank you.

(Emphasis added.) Given the evidence discussed above, even assuming, arguendo, that counsel should have objected to this argument, Appellant cannot show that this isolated remark meets the standards discussed above for demonstrating prejudice in this context. The evidence introduced at trial established that Appellant was driving while heavily impaired, when he turned in front of the semi-truck without adequate space, violating the truck's right-of-way. Under these circumstances, there is no indication that the prosecutor's remark deprived Appellant of a fair trial, materially contributed to his conviction, fundamentally tainted the proceedings, or inflamed the jury to reach a more severe verdict than it ordinarily would have rendered. Therefore, this claim was properly denied.

7

In Appellant's sixth claim, he argued that his attorney was ineffective for failing to call defense witness Amanda Price to testify. Appellant alleged that Ms. Price would have testified that the driver of the semi-truck was speeding and driving erratically at the time of the accident, thus contradicting the truck driver's testimony that he was not speeding, as well as the testimony of the highway patrol trooper and the traffic homicide investigator that Appellant was at fault in the accident.

Even if Ms. Price's testimony could have established that the driver of the semi-truck shared in the blame for the accident, there is no reasonable probability that it would have changed the outcome of the trial. First, her testimony would have been contradicted by that of the traffic homicide investigator, who testified that he estimated the speed of the semi-truck to be between 36 and 39 miles per hour at the time of the accident, and the speed limit was 40 miles per hour. Second, as discussed above, Ms. Watson testified that the semi-truck was moving fast, the speed limit was 40 or 45 miles per hour, and the truck appeared to be "doing every bit of that coming through the intersection." Thus, even Ms. Watson, who was concerned by the speed of the semi-truck at the time of the accident, estimated that it was going the speed limit.

Furthermore, DUI manslaughter requires proof that a defendant operated a vehicle while impaired within the meaning of section 316.193(1), Florida Statutes (2013), and, "by reason of such operation, cause[d] *or contribute[d]* to causing . . . [t]he death of any human being . . . ." § 316.193(3)(c)3.a., Fla. Stat. (2013) (emphasis added). "[T]he fact that someone is intoxicated and drives a particular vehicle which causes another person's death should be enough to satisfy the elements of DUI manslaughter." *State v. Hubbard*, 751 So. 2d 552, 563 (Fla. 1999). "The causation element of the amended statute was interpreted by [the Florida Supreme Court] in [*Magaw v. State*, 537 So. 2d 564, 567 (Fla. 1989),] as *not requiring* that the conduct of the operator of the vehicle be the *sole* cause." *Hubbard*, 751 So. 2d at 564 (emphasis in original).[3] "The statute requires only

_____

[3] The version of the statute being interpreted in those cases required that operating a vehicle while intoxicated "cause" a

8

that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice." *Magaw*, 537 So. 2d at 567.

Here, even if the driver of the semi-truck was speeding, it would not undermine the evidence that Appellant's actions caused or contributed to the accident. As discussed above, an eye witness testified that she was concerned when she saw Appellant's car start to turn in front of the truck, because he did not have enough time to make the turn. The traffic homicide investigator opined that Appellant was at fault, because he violated the semi-truck's right-of-way when he made the left turn, as they were both moving on a green signal and Appellant should have yielded. There was ample evidence establishing Appellant's intoxication at the time of the accident, including the results of the blood alcohol test, testimony regarding the odor of alcohol on his breath, bloodshot and watery eyes, and slurred speech. Thus, the evidence established that while Appellant was impaired, he turned in front of the truck without adequate time to safely complete the turn, thus violating the semi-truck's right-of-way. Under these circumstances, this claim was properly denied.

In Appellant's seventh claim, he argued that the cumulative effect of his attorney's errors deprived him of a fair trial. This claim was properly denied. For the reasons discussed above, Appellant's individual claims are meritless; therefore, "[b]ecause all of the allegations of individual legal error are without merit, a cumulative error argument based upon these errors must also fail." *See Barnhill v. State*, 971 So. 2d 106, 118 (Fla. 2007).

In Appellant's eighth claim, he argued that the trial court committed fundamental error in instructing the jury on the statutory presumption of impairment, because the blood alcohol

---

death, *see Hubbard*, 751 So. 2d at 562; *Magaw*, 537 So. 2d at 566, whereas the current version requires operating the vehicle to "cause or contribute to" the victim's death. *See* § 316.193(3)(c)3., Fla. Stat. (2013). The current version contains broader language.

evidence was not properly introduced. This claim is not cognizable pursuant to rule 3.850, because it should have been raised on direct appeal. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based upon grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); *Johnson v. State*, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008) ("[P]rosecutorial misconduct, insufficiency of the evidence . . ., and trial court error[] are not cognizable in a collateral postconviction motion."). Furthermore, as discussed in connection with Appellant's third claim, defense counsel did not object to the introduction of the lab report, therefore, the trial court had no basis to disregard the evidence of impairment.

AFFIRMED.

JAY and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Melvin L. Pryear, pro se, Appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, for Appellee.