# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-330
_____

RONALD CLARK BALL,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Thomas V. Dannheisser, Judge.

November 1, 2019

OSTERHAUS, J.

Ronald Clark Ball appeals his jury convictions and sentences on four counts of grand theft, two counts of money laundering, two counts of racketeering, and solicitation to tamper with evidence. We affirm.

## I.

The evidence at trial uncovered details of Mr. Ball's various schemes to swindle others and enrich himself. Mr. Ball met his primary victim, a wealthy widow, at a bar. After impressing her with his experience and knowledge of financial matters, they started dating and Mr. Ball moved into her house. About the same time, this victim became concerned with her financial situation and whether the money she had inherited from her late husband

would continue sustaining her. After speaking with a financial advisor who offered a four percent return on her investments, Mr. Ball offered to get the victim a return closer to eighteen percent. Unfortunately, the victim agreed to let Mr. Ball invest some of her money. She wrote him checks totaling over a million dollars and allowed him to invest her insurance policies. Mr. Ball proceeded to move her money around, into and through different corporations and bank and financial accounts that he established. Some accounts the victim authorized and some she didn't. With access to the victim's home, Mr. Ball gained the use of her personal bank records, driver's license, passport, and other financial records, along with her mail and computer.

At some point along the way, the victim noticed warning signs. For instance, she walked in on Mr. Ball one day while he was manipulating her signature on the computer screen. Indeed, he had a thumb drive containing multiple images of her signature. She eventually found that Mr. Ball had used her money to buy things for himself, such as a BMW, artwork, furniture, expensive clothes, watches, and the like. A fraud examiner was able to trace money from the various accounts to Mr. Ball's personal account. Mr. Ball ultimately spent or lost all of the money. In addition to her money, Mr. Ball used the accounts to commit crimes involving other victims.

The State charged Mr. Ball with four counts of grand theft, two counts of money laundering, two counts of racketeering, and solicitation to tamper with evidence. A jury later returned guilty verdicts on all counts. And this appeal followed.

## II.

A comprehensive review of the record demonstrates no merit in the six points raised by Mr. Ball challenging his convictions and sentences. We specifically address, however, Mr. Ball's argument that the two racketeering counts violate the Double Jeopardy Clause. Both the Florida and United States Constitutions contain Double Jeopardy Clauses that protect persons from multiple prosecutions for the same crime. *State v. Tuttle*, 177 So. 3d 1246, 1252 (Fla. 2015). "No person shall be . . . twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const.; U.S. Const. amend. V.; *see also Hayes v. State*, 803 So. 2d 695, 699 (Fla. 2001).

2

The question Mr. Ball raises here is whether the State wrongfully chopped one single pattern of crime into two separate criminal counts. That is, did Mr. Ball truly participate in more than one "pattern of racketeering activity" under the Florida Racketeer Influenced and Corrupt Organizations Act (RICO)? § 895.03(3), Fla. Stat. (prohibiting "any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity").*

In cases like this one, Florida courts have evaluated whether more than one pattern of racketeering activity exists using a five-factor, totality-of-the-circumstances test borrowed from federal cases. *See Donovan v. State*, 572 So. 2d 522, 528 (Fla. 5th DCA 1990) (citing *United States v. Ruggiero*, 754 F.2d 927 (11th Cir. 1985), *cert. denied*, 471 U.S. 1127 (1985)); *see also Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000) (noting that Florida courts look to the federal courts for guidance in construing RICO provisions). The five factors are:

1. Whether the activities allegedly constituting two RICO "patterns" occurred during the same time periods;

2. Whether the activities occurred in the same places;

3. Whether the activities involved the same persons;

4. Whether the same criminal statutes were allegedly violated; and

---

* "Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct. § 895.02(4), Fla. Stat. (2015).

3

5. Whether the overall nature and scope of the activities were the same.

*Donovan*, 572 So. 2d at 528. Uniformity among these factors in the charges alleged tends to show that only one pattern of racketeering activity exists. *Id.* at 528-29. But if these factors show differences between the RICO charges, then the prosecution does not violate the Double Jeopardy Clause.

Our review of Counts 7 and 8 indicate that the trial court got it right. The allegations and evidence show that Mr. Ball engaged in more than one pattern of racketeering activity through distinct enterprises, though some overlap existed. Specifically, Count 7 alleged that Mr. Ball and Noka World Energy (USA), LLC, engaged not only in efforts to swindle the primary victim out of her money, but also schemes involving an automobile dealership, loan companies, banks and tax documents. Count 8 charged acts of a different enterprise consisting of Mr. Ball, The Kessler Fund, LLC, and Noka World, LLC, over a different time period. The information charged this enterprise with crimes involving the primary victim and the financial entities listed in Count 7, but also involving the Florida Department of Economic Opportunity and an attempt to unlawfully obtain unemployment benefits. Count 8 doesn't include the auto-dealer, auto-financing, and tax-related allegations found in Count 7.

Because the State charged different time-periods, different enterprise membership, different victims, and different unlawful conduct in Counts 7 and 8, we agree with the trial court that this is not a situation like *Donovan* involving the same enterprise and the same pattern of racketeering activity. *Donovan*, 572 So. 2d at 528 (reversing where the State "unjustifiably tried to chop various components of a single pattern into separate patterns"). Even though Mr. Ball controlled both enterprises, each one was engaged "in similar but distinct activities." *United States v. Trucchio*, 196 Fed. Appx. 825, 827 (11th Cir. 2006). Overlapping enterprises pursuing different, though overlapping, patterns of racketeering can be prosecuted separately without violating double jeopardy protections. *See, e.g.*, *United States v. Schiro*, 679 F.3d 521, 526 (7th Cir. 2012); *United States v. DeCologero*, 364 F.3d 12, 18 (1st Cir. 2004) ("[e]very circuit to have examined the issue has agreed

4

that double jeopardy only bars successive RICO charges involving both the same enterprise and the same pattern of racketeering activity."). Thus, we find no error in the judgment and sentence related to the two racketeering counts.

## III.

We AFFIRM the judgment and sentence.

LEWIS and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Terry P. Roberts of the Law Office of Terry P. Roberts, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Steven E. Woods, Assistant Attorney General, Tallahassee, for Appellee.