DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DARREN JOSEPH TINKER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-3232

[June 8, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara Anne McCarthy, Judge; L.T. Case No. 18-005619-CF-10A.

Antony P. Ryan, Regional Counsel, and Siobhan Helene Shea, Special Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, C.J.

Darren Joseph Tinker ("Defendant") appeals his judgments and sentences after a jury found him guilty of multiple counts related to an alleged scheme involving Defendant and his parents. Defendant raises seven issues on appeal. However, because one issue is dispositive and requires reversal, the remainder of the issues are moot. We hold that the evidence was insufficient to allow the charges to proceed to determination by a jury. The trial court erred in denying Defendant's motion for judgment of acquittal.

*Background*

Defendant, his mother, and his father were charged with multiple counts related to an alleged scheme whereby companies created by

Defendant's father obtained properties via fraudulent deeds.[1]  Defendant was a vice president of Global Management Consulting Group Corp. ("Global Management") for at least some period during which the scheme was alleged to have spanned.  Defendant's father was president of Global Management and Defendant's mother was also vice president of the company.  Defendant's father and mother were also listed as corporate officers of a related corporation, Global Homebuyers LLC ("Global Home Buyers") (collectively, "the Global companies").  The three co-defendants lived in one of the properties obtained in the scheme.

The case proceeded to a jury trial with all three co-defendants represented by the same attorney.  Defendant was charged with multiple counts of grand theft of residential properties, criminal use of personal identification information of both living and deceased persons, and filing false documents or records against real property.  The State acknowledged that some of the business conducted by the Global companies was legitimate.  However, it alleged that the Global companies, through Defendant and his parents, also perpetrated fraud.  During the trial, copies of deeds which were signed by Defendant either as a representative of Global Management or as a witness were introduced into evidence to show Defendant's participation in the criminal scheme.  A power of attorney used in the scheme which bore Defendant's signature as a witness was also introduced into evidence, as well as an eviction notice signed by Defendant as a representative of Global Management for one of the properties which it fraudulently obtained and then rented.  Additionally, a security visitor log was introduced into evidence from the Broward County Governmental Center with Defendant's name listed on seven dates, which the State contended proved multiple instances of Defendant recording fraudulent documents as part of the scheme.

Defendant did not contest that the various documents the State entered at trial were fraudulent.  Instead, Defendant's theory of defense was that he had no knowledge of the fraudulent activity and that the fraud had been perpetrated by a rogue employee of Global Management, along with the help of several other individuals.

Defendant was twenty-four years old at the time of trial.  His father testified that Defendant started working for the family business in high

---

[1] Defendant's mother and father also appealed their judgments and sentences. Along with this opinion, we also issue a consolidated opinion reversing the mother's and father's cases and remanding for a new trial. *See Tinker v. State*, 4D19-3235 and 4D19-3233 (Fla. 4th DCA June 8, 2022).

school, ran errands, and cleaned the office. Additionally, he performed limited customer service by answering customer questions. Defendant testified he was fired multiple times by his father because he had a terrible work ethic. His father made him a vice president of Global Management to keep the appearance of a family business, but he had no duties as vice president. The State presented no evidence to conflict with the testimony of Defendant and his parents about his limited role in the family business.

After its initial presentation of evidence, the State rested, and Defendant moved for a judgment of acquittal. He argued that his name came up in the investigation only because he worked for the family company; his name on the visitor log at the recording office did not show guilt; the State did not prove the purported signatures on documents were his; he was only fourteen years old when the alleged fraudulent scheme began; and there was no evidence that he knew of a fraudulent scheme or that information in the documents filed for recording was fraudulent. The motion was renewed at the conclusion of all evidence, incorporating the same arguments. The trial court denied both motions.

The jury found Defendant guilty of twelve counts of unlawful filing of a false document; twenty-seven counts of criminal use of personal identification information; thirteen counts of criminal use of a deceased person's personal identification information; and fifteen counts of grand theft, for a total of sixty-seven convictions. The trial court granted Defendant's motion for downward departure for sentencing and sentenced Defendant to twenty years in prison, followed by twenty years of probation. Defendant gave notice of appeal.

*Appellate Analysis*

"We review the denial of a motion for judgment of acquittal de novo." *Demus v. State*, 281 So. 3d 505, 507-08 (Fla. 4th DCA 2019). "The question presented by such a motion is whether, in a light most favorable to the State, the evidence is legally sufficient to support the charge." *Bright v. State*, 191 So. 3d 497, 498 (Fla. 1st DCA 2016). In other words, "an appellate court must 'view[] the evidence in the light most favorable to the State' and, maintaining this perspective, ask whether 'a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.'" *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020) (alteration in original) (quoting *Rogers v. State*, 285 So. 3d 872, 891 (Fla. 2019)).

The State also alleged that Defendant acted as a principal. "In order to be guilty as a principal for a crime physically committed by another, one

must intend that the crime be committed and do some act to assist the other person in actually committing the crime." *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988).

"In resisting a judgment of acquittal, the state can rely on any evidence adduced, even evidence later determined to have been erroneously admitted." *Pryear v. State*, 243 So. 3d 479, 484 (Fla. 1st DCA 2018) (quoting *State v. Brockman*, 827 So. 2d 299, 302 (Fla. 1st DCA 2002)). "A defendant is not entitled to a judgment of acquittal 'merely because evidence that is critical to the court's finding of sufficiency was improperly admitted.'" *Id.* (quoting *Barton v. State*, 704 So. 2d 569, 573 (Fla. 1st DCA 1997)).

On appeal, Defendant does not frame his arguments around specific counts. Instead, he frames his arguments around various categories of evidence, contending that the State was unable to prove that he had the requisite knowledge of the "scheme" to support guilt on the counts against him.

In response, the State argues on appeal, as it did below, that five categories of evidence support Defendant's guilt: (1) he was a corporate officer of Global Management; (2) he physically recorded some of the fraudulent instruments; (3) he "sign[ed] and/or witness[ed] various fraudulent documents"; (4) he lived with his parents, co-defendants in the scheme, in one of the homes that was obtained by Global Management via fraudulent documents; and (5) he signed an eviction notice for one of the tenants living in one of the properties obtained by fraud. Notably, during closing argument, the State admitted that Defendant was guilty to "a lesser degree" than his parents.

As to the substantive crimes charged, we address the categories of evidence relied upon by the State.

*Criminal Use of Personal Identification Information and a Deceased Person's Personal Identification Information*

"[T]he elements of fraudulent use of personal identification information are: (1) willfully and fraudulently using or possessing with intent to fraudulently use; (2) another person's personal identification information; and (3) without that person's authorization or prior consent." *Sibley v. State*, 955 So. 2d 1222, 1226 (Fla. 5th DCA 2007); *see also* § 817.568(2)(c), Fla. Stat. (2018); Fla. Std. Jury Instr. (Crim.) 20.13.

4

Although no case in Florida has addressed or interpreted section 817.568(8)(c), Florida Statutes (2018), the offense of criminal use of a deceased individual's personal identification information, the wording of subsection (8)(c) is virtually the same as subsection (2)(c), thus the elements are the same, except that the crime of criminal use of a deceased person's identification information requires that the victim is deceased, rather than a living individual. *Compare* § 817.568(2)(c), Fla. Stat. (2018), *with* § 817.568(8)(c), Fla. Stat. (2018).

The first element is the only one at issue. As to this crime, "'[w]illfully' means intentionally, *knowingly*, and purposely." Fla. Std. Jury Instrs. (Crim.) 20.13, 20.17 (emphasis added). "'Fraudulently' means purposely or intentionally suppressing the truth or perpetrating a deception or both." *Id.*

The State's strongest evidence against Defendant as to the first element was that he signed[2] certain deeds and a power of attorney. However, for two reasons, Defendant's signature on the documents is insufficient evidence that Defendant had knowledge of any fraudulent scheme.

First, Defendant's signature does not appear on any documents as a notary. Therefore, his signature was not certifying that he had satisfactory evidence that the person signing the document was in fact the person whom he or she purported to be. *See* § 117.05(5), Fla. Stat. (2018) ("A notary public may not notarize a signature on a document unless he or she personally knows, or has satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the instrument.").

Second, Defendant's signature appears on seven documents admitted into evidence by the State as either a witness or signor on behalf of Global Management. Two exhibits are duplicates. Of the remaining five documents, four are deeds transferring properties between the related Global companies. More importantly, no one testified that the signatures within the five documents were fraudulent, as the signors were all Global Management representatives.

---

[2] Defendant also challenges the State's evidence that it was his signature on these documents. However, although the trial court may have erred in allowing a detective who was not a handwriting expert to identify Defendant's signature, the State may still rely on this evidence in combatting Defendant's motion for judgment of acquittal. *See Pryear*, 243 So. 3d at 484.

Despite no testimony of fraudulent signatures, one of the four deeds did indicate possible fraud within the document. Specifically, while that deed is dated in 2010, Defendant's mother signed as a notary on the deed and her notary stamp reflects that her commission expires in 2017. There was evidence that notary commissions are valid for only four years, indicating potential fraud within this deed given the discrepancy between the date of the document and the date of the expiration of the notary commission. However, any fraud regarding the date of expiration of the notary's commission does not support an inference that *Defendant* had knowledge of any fraud with the notarization. We doubt that the average citizen pays attention to the expiration date on the notary's stamp when the citizen's signature as a party is acknowledged by a notary or added as a witness to a party signing, particularly because typically the notary signs last and typically the notary stamp is applied after the notary signs.

Additionally, Defendant signed the deed with the suspect notary expiration date as a subscribing witness. The signature of two subscribing witnesses is required on a real estate conveyance. § 689.01, Fla. Stat. (2018). However, the signature of a subscribing witness does not certify that any information contained within the document is correct, but instead, simply vouches for the other *signatures* on the document. *See Subscribing Witness*, Black's Law Dictionary (11th ed. 2019) ("Someone who witnesses the signatures on an instrument and signs at the end of the instrument to that effect."); *see also Attesting Witness*, Black's Law Dictionary (11th ed. 2019) ("Someone who vouches for the authenticity of another's signature by signing an instrument that the other has signed."). Again, because no one testified that the *signatures* on any of the deeds which Defendant signed were fraudulent, no evidence supports an inference that Defendant had knowledge of fraud.

The fifth exhibit was a power of attorney purportedly signed by Defendant as an attesting witness. The power of attorney granted Global Management powers regarding a specific parcel of real property. While the State submitted evidence of fraudulent information in relation to the property associated with the power of attorney, the State did not submit any evidence that the *power of attorney* contained any fraud. And the State did not submit any evidence that Defendant knew of any fraudulent information in relation to the property.

Therefore, although the State submitted evidence that properties were obtained by the Global companies through fraudulent documents, the State did not submit any evidence upon which a rational juror could find beyond a reasonable doubt that Defendant had knowledge of fraudulent activity. Just because Defendant signed or witnessed a deed from one

6

Global entity to another entity does not provide even circumstantial evidence that he knew fraudulent activity was involved in the transaction. The State did not submit any evidence that Defendant knew the background or substance of any of the documents on which his signature appears or he filed for recording.

As to the State's contention that evidence that Defendant (1) was a corporate officer for Global Management during some portion of the years the fraudulent activity occurred, (2) recorded some of the fraudulent documents, (3) lived in one of the homes that was obtained by fraud, and (4) signed an eviction notice for one of the properties, we conclude that none of such evidence, singularly or in combination, is sufficient to prove beyond a reasonable doubt that Defendant knew of fraudulent activity to effectuate or assist the criminal scheme.

The fact that Defendant was listed as a corporate officer in one of his father's corporations is not sufficient to prove knowledge of criminal activity. The State argues a presumption exists that Defendant knew of the fraudulent actions of Global Management as a corporate officer, citing to *United Bonding Insurance Co. v. Dura-Stress, Inc.*, 243 So. 2d 244 (Fla. 2d DCA 1971). However, *United Bonding* is a civil case which concluded that a corporate officer's affidavit was not insufficient because he did not state that the affidavit was made from his own personal knowledge. *Id.* at 246. The Second District said:

> It is generally held that when an officer of a corporation makes an affidavit in its behalf, it is not necessary that he should state the sources of his knowledge, or information and belief. An officer must be possessed of the requisite knowledge, but such knowledge on his part is presumed.

*Id.* (citation omitted). However, regarding presumptive knowledge, a distinct difference exists between the scenario of a corporate officer executing an affidavit (inherently a statement of facts) and a corporate officer signing a document pertaining to a parcel of real property as a party or witness, including an attesting witness. Simply stated, *United Bonding* does not support the contention that, in a criminal case, each corporate officer of a company should be presumed to have knowledge of criminal activity charged in relation to corporate acts.

Additionally, the State did not submit any evidence in this case to show that Defendant had any responsibilities for or knowledge of fraudulent activity because of his position as corporate officer, or that his position was anything more than a name on paper. *Cf. State v. Petagine*, 290 So.

7

3d 991, 994 (Fla. 1st DCA 2020) (finding evidence sufficient to survive a motion to dismiss where the defendant was the leader of the executive council of a fraternity, directed all fraternity activities, and "had the organizational and actual authority to stop all acts of hazing conducted by all members of the [f]raternity").

The fact that Defendant lived with his family in one of the houses which was obtained through fraudulent documents also does not support that he had any knowledge or involvement in a scheme. The State did not submit any evidence that Defendant was anything other than a young person living in his parents' house. We doubt that children from high school age to age twenty-four necessarily know the intricate details of the ownership interest in their parents' home, particularly if a corporate entity owns the home.

Finally, the fact that Defendant recorded some of the fraudulent deeds does not provide evidence that he did so with the *knowledge or intent* to defraud. *Cf. Watkins v. State*, 826 So. 2d 471, 474–75 (Fla. 1st DCA 2002) (finding that the trial court erred in denying the defendant's motion for judgment of acquittal as principal to a charge of forgery where, although there was evidence that the defendant uttered the counterfeit check, there was no evidence he "falsely made, altered, forged or counterfeited the check or that he did some act or said some word that was intended to and did incite or cause another individual to counterfeit the check").

Similarly, the State's evidence that Defendant signed an eviction document does not demonstrate that he had knowledge that the Global companies obtained ownership of that property by fraud. These are actions which would have occurred in the regular course of business handling real properties. The State did not contend at trial that *all* the Global companies' business involved fraud, and evidence was submitted that the Global companies engaged in some legitimate business. The actions which the State alleges support Defendant's conviction do not indicate that Defendant had any knowledge of any *fraudulent* transactions in addition to legitimate transactions. Thus, without more, the evidence which the State submitted does not provide a sufficient basis upon which a rational juror could find beyond a reasonable doubt that Defendant knew or intended fraud.

We agree with Defendant that *Javellana v. State*, 168 So. 3d 283 (Fla. 4th DCA 2015), a case with analogous facts, is instructive. In *Javellana*, the defendant was charged with financial exploitation of an elderly or disabled adult. *Id.* at 284. The defendant and his wife, a co-defendant, were well acquainted with the victim, an elderly woman with "a vast

financial estate." *Id.* The wife worked at an investment firm and began assisting with the victim's account in the early 1980s. *Id.* In the mid-1990s, the victim executed a will, including several trusts, which provided for long-term care of the victim's adult children who were incapable of independent living. *Id.* Beginning in 2008, the victim made multiple amendments to her estate documents, through an attorney who was a "good friend" of the wife. *Id.* The wife referred the victim to her attorney friend. *Id.* The defendant and the wife also witnessed the victim's execution of some amendments to her estate documents, and the defendant would "chauffeur[]" the victim on errands. *Id.* The amendments resulted in the defendant and the wife being residual beneficiaries of the victim's estate. *Id.*

After noting that the defendant was charged as a principal, we concluded that the evidence against him was insufficient to support a conviction:

> While we do not decide whether there was sufficient evidence to establish that the defendant's wife exploited [the victim], we find the evidence was insufficient, however, to allow the jury to infer that the defendant aided and abetted or otherwise willingly participated in any such exploitation. The state points to no evidence establishing that the defendant was ever aware that [the victim] was amending her estate documents to benefit the defendant and his wife. There was no evidence that the defendant was involved in arranging the appointment for a court-ordered mental competency evaluation or that the defendant even spoke to his wife about [the victim's] estate. There was simply no evidence that the defendant knew anything about [the victim's] estate or of any plan by his wife to exploit [the victim]; thus, there was no evidence of his conscious intent that the crime be committed.

*Id.* at 285.[3]

Like *Javellana*, even if (1) Defendant received a residual financial benefit of the fraud because of his position as an officer in Global Management; (2) served as a witness on documents (without proof of knowledge of fraud); (3) lived in his parents' house, obtained by fraud; and

---

[3] In *Javellana*, our analysis additionally opined that the State's case did not rebut the defendant's reasonable hypothesis of innocence. 168 So. 3d at 285. This additional basis for reversal was under the old special standard for circumstantial evidence.

(4) his family members were part of a scheme, we hold that such evidence, singularly and in combination, is insufficient to support an inference beyond a reasonable doubt that Defendant had any knowledge that fraud was occurring.

*Unlawful Filing of Documents or Records Against Real Property*

Pertinent to the facts of this case, the crime of unlawful filing of documents or records against real property has three elements: (1) the defendant filed an instrument; (2) at the time, the defendant had the intent to defraud or harass another; and (3) the instrument contained a materially false, fictitious, or fraudulent statement or representation that purported to affect an owner's interest in the property described in the instrument. *In re Standard Jury Instructions in Criminal Cases-Report No. 2016-02*, 199 So. 3d 234, 239 (Fla. 2016).

On the second element—the intent to defraud and harass another—the State's evidence fails. Although Criminal Standard Jury Instruction 20.22 does not contain any instructions on the intent to defraud or harass element of the crime, clearly a person cannot intend to engage in fraudulent activity without knowledge of the fraudulent nature of the activity. *Cf. Anchor Prop. & Cas. Ins. Co. v. Trif*, 322 So. 3d 663, 675 (Fla. 4th DCA 2021) ("Indeed, in jurisprudence, 'the word "false" implies something more than mere untruth: it imports knowledge and a specific intent to deceive.'" (quoting *State v. Tedesco*, 397 A.2d 1352, 1358 (Conn. 1978))).

Again, viewing the evidence in a light most favorable to the State, no rational juror could find beyond a reasonable doubt that Defendant had any knowledge of fraud, let alone that it was his intent to perpetrate deception. No evidence was presented that Defendant signed or presented documents to knowingly certify any information he knew to be fraudulent. No evidence was presented that he knowingly witnessed a fraudulent document. Moreover, for the same reasons discussed above, the State's additional evidence regarding Defendant's residence, his name listed as an officer for his father's company, and his recording of several fraudulent documents, is not sufficient to establish his knowledge, and therefore, his intent to engage in unlawful filing of documents or records against real property.

*Grand Theft*

10

Finally, the three foundational elements for a charge of grand theft[4] are:

> (1) knowingly (2) obtaining or using, or endeavoring to obtain or use, property of another (3) with intent to deprive the person of a right to the property or a benefit therefrom, or to appropriate the property to one's own use or to the use of any person not entitled thereto.

*Pizzo v. State*, 945 So. 2d 1203, 1207 (Fla. 2006) (quoting *Donovan v. State*, 572 So. 2d 522, 526 (Fla. 5th DCA 1990)). For the same reasons as with the other counts filed against Defendant, the evidence described above does not support a finding that Defendant had the requisite knowledge or intent.

*Conclusion*

Accordingly, viewing the evidence in the light most favorable to the State, a rational juror could not have found the existence of the knowledge and intent elements of each of the crimes charged against Defendant beyond a reasonable doubt. *See Bush*, 295 So. 3d at 200. We hold that the trial court erred in denying Defendant's motion for judgment of acquittal as to all the charges against him, and reverse and remand for the trial court to vacate the judgments and sentences entered against Defendant and for entry of a judgment of acquittal as to all charges.

*Reversed and remanded for entry of a judgment of acquittal.*

GROSS and MAY, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[4] Defendant was charged with monetary theft, which includes an additional element. However, that element is not at issue.

11